GUILFORD MILLS, INC. v. POWERS

[95 N.C. App. 417 (1989)]

———————

GUILFORD MILLS, INC., A DELAWARE CORPORATION v. HELEN A. POWERS, SECRETARY OF REVENUE OF THE STATE OF NORTH CAROLINA

No. 8818SC1305

(Filed 5 September 1989)

1. **Taxation § 32 — intangibles tax — payments to plaintiff for sale of trade accounts — classification as accounts receivable**

    Plaintiff failed to prove that the trial court erroneously interpreted N.C.G.S. § 105-201 when it determined that the Department of Revenue correctly classified the payments owed to plaintiff for the sale of its trade accounts to factors as accounts receivable since the payments owed to plaintiff were owed from one corporate person to another; there was no evidence in the record on appeal that these payments were supported by negotiable paper; though accounts receivable usual-ly arise from the sale of goods or rendering of services, there is no requirement that they must do so; and the payments owed to plaintiff were amounts owed by one corporate person to another on accounts which had balances which had not been ascertained, that is, they were amounts owed on open accounts.

GUILFORD MILLS, INC. v. POWERS

[95 N.C. App. 417 (1989)]

2. **Taxation § 32— intangibles tax—payments from factors upon sale of trade accounts—no classification as "other evidences of debt"**

The trial court did not erroneously interpret N.C.G.S. § 105-202 when it determined that plaintiff's right to payment from its factors upon sale of its trade accounts did not have to be classified as "other evidences of debt" rather than as accounts receivable, since the factoring agreements contained in the record did not import on their faces the existence of a debt.

APPEAL by plaintiff from *Walker, Russell G., Judge.* Judgment entered 17 October 1988 in Superior Court, GUILFORD County. Heard in the Court of Appeals 6 June 1989.

Plaintiff instituted this action on 30 March 1988 to recover intangible taxes and interest paid by plaintiff. The trial court denied plaintiff's motion for summary judgment and allowed defendant's motion for summary judgment.

*Floyd Greeson Allen and Jacobs, by Jack W. Floyd and Robert V. Shaver, for plaintiff-appellant.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Marilyn R. Mudge, for defendant-appellee.*

JOHNSON, Judge.

Plaintiff is engaged in the business of manufacturing and selling textiles. Plaintiff establishes trade accounts with its customers and enters into written agreements with commercial factors which provide that the factors will purchase plaintiff's trade accounts. A factor assumes the risk that it will not be able to collect an account after it has purchased that account. When a factor purchases an account, it becomes indebted to plaintiff according to the terms agreed upon by the parties.

Plaintiff classified the payment which it was owed by factors for the sale of its trade accounts as "bonds, notes and other evidences of debt" on its intangible personal property tax returns for the years 1981 through 1984. Plaintiff made this classification pursuant to G.S. sec. 105-202, the statute which governs the taxation of bonds, notes, and other evidences of debt. On 31 May 1985, the North Carolina Department of Revenue issued a field auditor's

report which stated that the payment which was owed to plaintiff for the sale of its trade accounts should have been reported as "accounts receivable," which are governed by G.S. sec. 105-201. This report also stated that plaintiff owed $212,451.23 in back taxes, interest and penalties due to its erroneous classification of the payments it was owed for the sale of its trade accounts and due to other improprieties in plaintiff's tax returns. The Department of Revenue issued notices of tax assessment against plaintiff on 11 June 1985; the partial copy of these notices contained in the record on appeal indicates that the amount assessed against plaintiff was substantially similar to the amount stated in the field auditor's report.

The classification of the payments owed to plaintiff for the sale of its trade accounts affected the amount of tax owed by plaintiff because it affected the type of deductions plaintiff could claim. If the payments owed to plaintiff were classified as accounts receivable then G.S. sec. 105-201 allowed plaintiff to deduct its accounts payable, but if the payments were classified as notes, bonds or other evidences of debt then G.S. sec. 105-202 allowed plaintiff to deduct its "like evidences of debt" instead of its accounts payable.

Plaintiff filed this action on 30 March 1988 to recover the intangible taxes and interest it had paid. Plaintiff claimed that the Department of Revenue had agreed to refund the penalty payments plaintiff had made, and plaintiff claimed that the total amount then in controversy was $199,374.01. Plaintiff's motion for summary judgment was filed 16 August 1988. Defendant's motion for summary judgment was filed 23 August 1988. On 17 October 1988, the trial court denied plaintiff's motion for summary judgment and allowed defendant's motion for summary judgment.

Plaintiff contends on appeal that the trial court erroneously interpreted G.S. secs. 105-201 and 105-202 in order to determine that the payments owed to plaintiff for the sale of its trade accounts should have been classified on plaintiff's tax returns as accounts receivable. We disagree.

Tax assessments are presumed to be correct. *Riggs v. Coble, Sec. of Revenue*, 37 N.C. App. 266, 245 S.E.2d 831 (1978). Plaintiff therefore bears the burden of proving that the Department of Revenue employed an erroneous interpretation of the relevant taxation statutes in order to make an incorrect tax as-

sessment. We find that plaintiff has not met this burden of proof.

[1] Plaintiff has failed to prove that the trial court erroneously interpreted G.S. sec. 105-201 when it determined that the Department of Revenue correctly classified the payments owed to plaintiff for the sale of its trade accounts as accounts receivable. G.S. sec. 105-201 does not define the term "accounts receivable." When a statutory term is not defined in a statute, "the words must be given their ordinary meaning unless the statute contains a clear indication to the contrary, or the words have acquired a technical significance." *Midrex Corp. v. Lynch, Sec. of Revenue*, 50 N.C. App. 611, 614, 274 S.E.2d 853, 855 (1981). This Court has stated that an account receivable "is ordinarily understood to be an amount owed from one person to another usually arising from the sale of goods or rendering of services and not supported by negotiable paper." *Moore and Van Allen v. Lynch*, 61 N.C. App. 601, 602, 301 S.E.2d 426, 427, *disc. rev. denied*, 308 N.C. 677, 304 S.E.2d 756 (1983). The payments owed to plaintiff were owed from one corporate person to another, and there is no evidence in the record on appeal that these payments were supported by negotiable paper. Therefore, these payments can be considered to be accounts receivable according to the *Moore and Van Allen* definition of the term. The payments owed to plaintiff did not arise from the sale of goods or rendering of services, but *Moore and Van Allen* does not state that accounts receivable *must* arise from the sale of goods or rendering of services, it merely states that accounts receivable *usually* arise in this way.

Another widely accepted definition states that "[a]n 'account receivable' in the ordinary and commercial sense is an amount owing by one person to another on an open account." 1 Am. Jur. 2d *Accounts and Accounting* sec. 2 (1962). An open account is "an account the balance on which has not been ascertained . . ." *Id.* sec. 4. The payments owed to plaintiff clearly qualified as accounts receivable according to the definition stated above, since these payments were amounts owed by one corporate person to another on accounts which had balances which had not been ascertained. (The balances on these accounts had not been ascertained because new trade accounts could be added to these accounts at any time during the life of the contracts between plaintiff and its factors.) Another definition states that accounts receivable are "contract obligations owing to a person on open account." 1 C.J.S. *Account*

(1985), and the payments owed to plaintiff also clearly qualified as accounts receivable according to this definition. We find that the definitions stated above indicate that plaintiff has not met its burden of proving that the trial court erred in finding that the payments in question could be classified as accounts receivable.

We also note that plaintiff's contention that an account receivable can only arise from the sale of goods or rendering of services is incorrect. The last paragraph of G.S. sec. 105-201 deals with "the purchase or sale of stocks, bonds or other securities from which such [securities] brokers derive accounts receivable." This statutory language clearly indicates that accounts receivable may arise from the sale of intangible property.

[2] Plaintiff also contends that the trial court erroneously interpreted G.S. sec. 105-202 when it determined that plaintiff's right to payment from its factors did not have to be classified as "other evidences of debt." In order to evaluate plaintiff's claim we must analyze the meaning of the term "other evidences of debt." G.S. sec. 105-202 does not define this term. *Black's Law Dictionary*, however, defines "evidence of debt" as "written instruments or securities for the payment of money, importing on their face the existence of a debt." Black's Law Dictionary 499 (5th ed. 1979).

Copies of two factoring agreements are contained in the record on appeal. The factoring agreement between plaintiff and First National Factors of Boston ("First National") stated that plaintiff would sell to the factor its "accounts receivable . . . arising during the term of this agreement," but this agreement did not provide for the sale of any already existing accounts. The sale of plaintiff's trade accounts to First National at some time after the execution of the factoring agreement was therefore a condition precedent to the existence of any financial obligation on the part of First National, so First National was not indebted to plaintiff when the factoring agreement was executed. The agreement between plaintiff and First National therefore did not import on its face the existence of a debt. Plaintiff's factoring agreement with Chemical Bank's Dommerich Division stated that Chemical Bank was buying "all of said receivables acceptable to and approved by you [Chemical Bank]." Although the agreement stated that accounts not accepted by Chemical Bank would nonetheless be assigned to it, the agreement stated that Chemical Bank would have "full recourse" to plaintiff for unaccepted accounts. Chemical Bank may have been

technically liable to plaintiff for these unaccepted accounts, but plaintiff was in turn liable to Chemical Bank under "full recourse" for these accounts, so as a practical matter Chemical Bank was not indebted to plaintiff for any unaccepted accounts. It appears that Chemical Bank did not become indebted to plaintiff when the factoring agreement was executed. Therefore, Chemical Bank only became indebted to plaintiff when it accepted one of plaintiff's accounts. The factoring agreements contained in the record on appeal did not import on their faces the existence of a debt, so these agreements did not qualify as "evidences of debt" according to the commonly accepted definition stated above. We therefore find that plaintiff has failed to prove that the trial court erroneously interpreted G.S. sec. 105-202 when it determined that plaintiff's right to payment from its factors did not have to be classified as "other evidences of debt."

Affirmed.

Judges COZORT and GREENE concur.