TROY D. POTTER, T/A PAMCO FARM SERVICE COMPANY, PLAINTIFF v. ROBERT TYNDALL, DEFENDANT, v. R. C. NOBLE, LAWRENCE POWELL, AND NA-CHURS PLANT FOOD COMPANY, ADDITIONAL DEFENDANTS

No. 743SC362

(Filed 19 June 1974)

Agriculture § 9— damages from use of fertilizer — statutory prerequisites — inapplicability to action for breach of express warranty

The statute setting forth prerequisites for a "suit for damages claimed to result from use of any lot of mixed fertilizer," G.S. 106-50.7(e)(4), is not applicable to actions for breach of an express warranty of fitness of fertilizer for the purposes for which it was warranted.

APPEAL by defendant Robert Tyndall from *Fountain, Judge,* 4 February 1974 Session of Superior Court held in CRAVEN County.

Heard in the Court of Appeals 10 April 1974.

Appellee Troy D. Potter brought this action to recover $586.50 on an account. He alleged that appellant Robert Tyndall had bought a large quantity of Na-Churs Plant Food and other fertilizers and had not paid for his purchases.

Appellant Tyndall counterclaimed against Potter and impleaded appellees R. C. Noble, Lawrence Powell and Na-Churs Plant Food Company (hereinafter referred to as Na-Churs) as additional defendants. He alleged that Potter, Noble and Powell had falsely represented to him that Na-Churs Plant Food was a good fertilizer for use on tobacco. In making this representation they were acting as agents of Na-Churs. They told appellant that Na-Churs "maintained a crop service soil testing laboratory through which it could be ascertained exactly what proportion of Na-Churs Plant Food should be applied to the soil when the

defendant was transplanting his tobacco from the tobacco bed to the field." Appellant allowed them to take soil samples from his field and send the samples to Na-Churs' laboratory. Na-Churs' laboratory replied and "recommended specific amounts of Na-Churs Plant Food products per acre to be used at planting time in the transplanting solution." Appellant purchased a supply of Na-Churs Plant Food and used the recommended amount when he set out his tobacco. Shortly thereafter, his tobacco plants withered and died, and appellant suffered damages in the amount of $6,555.74.

Appellees moved for summary judgment dismissing the counterclaim and cross-actions of appellant and submitted affidavits in support of their claim that appellant had not complied with G.S. 106-50.7 (e) (4). Appellant submitted an affidavit from the Commissioner of Agriculture of North Carolina, which stated that Na-Churs Plant Food, while registered with the Department of Agriculture as a fertilizer, was not registered as a tobacco fertilizer; that according to information in the Department file, Na-Churs' agents had made statements that it could safely be used on tobacco; that these statements were "incorrect" and might be "misleading and deceptive"; and that the Commissioner was "not in a position to say that Na-Churs Plant Food Company has offered for sale during the 1969 season any kind of dishonest or fraudulent goods."

The court granted the motion of appellees for summary judgment and dismissed appellant's counterclaim and cross-actions.

*Ward, Tucker, Ward & Smith, by Michael P. Flanagan, for plaintiff appellee.*

*Lee & Hancock, by C. E. Hancock, Jr., and Moses D. Lassiter, for defendant appellant Robert Tyndall.*

*David S. Henderson for additional defendant appellees R. C. Noble and Lawrence Powell.*

*Barden, Stith, McCotter & Stith, by Laurence A. Stith, and Barnes & Braswell, by Henson P. Barnes, for additional defendant appellee Na-Churs Plant Food Company.*

BALEY, Judge.

Appellant contends that appellees misled him by false statements and persuaded him to fertilize his tobacco with Na-Churs

Plant Food. Na-Churs Plant Food was not suitable for use on tobacco, and appellant's tobacco plants withered and died. Appellant does not seriously contend that Na-Churs' Plant Food was a defective fertilizer; he admits in his brief that it was an entirely appropriate and safe fertilizer for use on certain crops, but not on tobacco. He contends that his losses were not caused by any inherent defects in the fertilizer, but by appellees' express warranty of fitness of the fertilizer for use on tobacco.

Appellees assert that appellant's counterclaim cannot be maintained, because appellant has not complied with G.S. 106-50.7 (e) (4). This section is a part of the North Carolina Fertilizer Law of 1947. It provides:

> "No suit for damages claimed to result from the use of any lot of mixed fertilizer or fertilizer material may be brought unless it shall be shown by an analysis of a sample taken and analyzed in accordance with the provisions of this article, that the said lot of fertilizer as represented by a sample or samples taken in accordance with the provisions of this section does not conform to the provisions of this article with respect to the composition of the mixed fertilizer or fertilizer material, unless it shall appear to the Commissioner that the manufacturer of the fertilizer in question has, in the manufacture of other goods offered in this State during such season, employed such ingredients as are outlawed by the provisions of this article, or unless it shall appear to the Commissioner that the manufacturer of such fertilizer has offered for sale during that season any kind of dishonest or fraudulent goods."

Appellees contend that appellant's counterclaim is a "suit for damages claimed to result from the use of any lot of mixed fertilizer" within the meaning of G.S. 106-50.7 (e) (4). Appellant contends that his counterclaim is outside the scope of the statute.

Under G.S. 106-50.7 (e) (4), before any "suit for damages claimed to result from the use of any lot of mixed fertilizer" may be brought, a litigant must comply with one of three prerequisites: one, obtain a chemical analysis of the fertilizer in question and show that it does not contain the legally required percentages of plant nutrients; two, secure a statement from the Commissioner of Agriculture stating that the fertilizer contained an illegal ingredient; three, have the Commissioner of Agriculture execute an affidavit to the effect that the manufac-

turer of the fertilizer "has offered for sale during that season any kind of dishonest or fraudulent goods." It is clear that appellant has failed to comply with any of these three prerequisites, not because of lack of diligence on his part, but because it is impossible for any farmer suffering damages from the breach of an express warranty of fitness to satisfy the requirements of this statute. Appellant admits that Na-Churs Plant Food is a product which meets all legal requirements and is safe for use on certain crops other than tobacco. He does not contend that it contained any illegal ingredient. It is not a defective fertilizer which could be classified as "dishonest or fraudulent goods." But because goods are not inherently dishonest and fraudulent in themselves does not mean that they cannot be sold in a dishonest or fraudulent manner. While in this case, the Commissioner of Agriculture refused to say that the fertilizer constituted "dishonest and fraudulent goods," he did state that the sales representative had made "misleading and deceptive" representations.

For the farmer whose crops are damaged by a defective fertilizer, compliance with G.S. 106-50.7 (e) (4) is not excessively difficult; the statute simply requires that he prove his damages in one of three specified ways, rather than in any other way. But for the farmer who loses his crop because of fraudulent misrepresentations by fertilizer salesmen, compliance with G.S. 106-50.7 (e) (4) is impossible.

Thus the far-reaching implications of appellees' proposed construction of G.S. 106-50.7 (e) (4) become apparent. If the statute is interpreted as applying to cases such as this one, a farmer could not recover damages for breach of an express warranty of fitness for the purpose for which the fertilizer was warranted. So long as his fertilizer is not inherently defective, a manufacturer or seller can make any kind of fraudulent statement about it, without fear of being held liable for damages. In effect, under appellees' interpretation, G.S. 106-50.7 (e) (4) gives fertilizer sellers a license to defraud.

Such an unjust construction of the statute should be avoided if at all possible. "It is not the way of the courts to impute to a lawmaking agency" "a purpose and intent so fraught with injustice as to shock the consciences of fair-minded men." *Puckett v. Sellars*, 235 N.C. 264, 268, 69 S.E. 2d 497, 500; *accord, Little v. Stevens*, 267 N.C. 328, 148 S.E. 2d 201; *Young v. Whitehall Co.*, 229 N.C. 360, 49 S.E. 2d 797; *Kanoy v. Kanoy*, 17 N.C.

Potter v. Tyndall

App. 344, 194 S.E. 2d 201, *cert. denied,* 283 N.C. 257, 195 S.E. 2d 689; *Wagoner v. Butcher,* 6 N.C. App. 221, 170 S.E. 2d 151.

Furthermore, if G.S. 106-50.7 (e) (4) is applied to actions for breach of an express warranty of fitness, substantial constitutional questions will arise. It is not clear why sellers of fertilizers should be immunized from liability for breach of an express warranty of fitness, while sellers of other products are not so immunized. Statutory classifications which lack any rational basis violate the equal protection clause of the Fourteenth Amendment. *Eisenstadt v. Baird,* 405 U.S. 438 (1972); *Carrington v. Rash,* 380 U.S. 89 (1965); *Cheek v. City of Charlotte,* 273 N.C. 293, 160 S.E. 2d 18. Statutes should be construed, when possible, in such a way as to avoid serious doubt of their constitutionality. *Education Assistance Authority v. Bank,* 276 N.C. 576, 174 S.E. 2d 551; *Milk Commission v. Food Stores,* 270 N.C. 323, 154 S.E. 2d 548.

An examination of certain other sections of the North Carolina Fertilizer Law of 1947 lends support to the conclusion that G.S. 106-50.7 (e) (4) is not applicable to actions for breach of an express warranty of fitness. Under G.S. 106-50.12 and 106-50.20(3), the making of any "false or misleading" statements or representation concerning fertilizer is punishable as a misdemeanor. These sections clearly show that the legislature was concerned about misrepresentations relating to fertilizer and desired to prohibit them. It would have been highly illogical for the legislature to abolish all civil liability for misrepresentations by fertilizer salesmen, while at the same time making such misrepresentations a criminal offense.

We hold that G.S. 106-50.7 (e) (4) does not apply to actions for damages for breach of an express warranty of fitness of the fertilizer for the purposes for which it was warranted. When a litigant alleges that he has been damaged by the use of inherently defective fertilizer, he must comply with one of the prerequisites of the statute. But when the litigant alleges that his losses are the result of false statements concerning fertilizer which constitutes an express warranty of fitness, he is not required to comply.

In his brief, appellant makes clear his contention that his damages were caused by the false statements of appellees, and not by any inherent defects in the fertilizer. At the same time, however, he argues that he is entitled to recover damages for

---
Holder v. Moore
---

breach of implied warranty under G.S. 25-2-315; and his plead-ings appear to be based on this theory. An action to recover damages for breach of implied warranty is in essence an action based on the inherent defects of the goods. Such an action is within the scope of G.S. 106-50.7(e)(4). (It should be noted that G.S. 25-2-315 does not repeal or limit the scope of G.S. 106-50.7(e)(4), since G.S. 25-2-102 provides that the Uniform Commercial Code does not "impair or repeal any statute regulat-ing sales to . . . farmers.")

Although appellant's pleadings refer to G.S. 25-2-315 relat-ing to implied warranty, in reality his pleadings state a cause of action for breach of *express* warranty under G.S. 25-2-313. Appellant alleges that appellees took soil samples for testing the effectiveness of Na-Churs Plant Food upon his soil when used for production of tobacco and expressly represented to him that it was safe for use in the transplanting of his tobacco. Since an express representation was made, appellant has no need to rely on an implied warranty. Appellant's alleged losses were caused by his reliance on appellees' false representations, and not by any inherent defects of Na-Churs Plant Food. His action is therefore outside the scope of G.S. 106-50.7(e)(4), and he should not be required to comply with that statute.

The Superior Court erred in granting summary judgment against appellant, and its judgment is reversed.

Reversed.

Chief Judge BROCK and Judge PARKER concur.