MIDREX CORPORATION v. MARK G. LYNCH, SECRETARY OF THE NORTH
CAROLINA DEPARTMENT OF REVENUE

No. 8026SC616

(Filed 17 February 1981)

Taxation § 32— tax on intangibles — customer advances are not accounts
payable

    Customer advances on construction contracts are not "accounts payable"
which are deductible under the intangible tax statute, G.S. 105-201.

APPEAL by plaintiff from *Ferrell, Judge.* Judgment signed 24
March 1980 in Superior Court, MECKLENBURG County. Heard in
the Court of Appeals 14 January 1981.

Plaintiff is a Delaware corporation with its principal place of
business in Charlotte, North Carolina. It constructs iron processing
plants, utilizing a patented process for the direct reduction of iron
from ore. In 1974 and 1975 it entered into three contracts to con-
struct such plants for foreign customers. Under the terms of the
contracts, each customer was required to make an advance deposit
of a part of the contract price before plaintiff began its performance
of the contracts. Plaintiff used these funds to finance its construc-
tion of the plants. The advances amounted to $8,391,700 on 31
December 1975.

In filing its intangible tax return for the taxable year 1975,
plaintiff listed those advances as accounts payable and deducted
them from its listed accounts receivable in determining its total tax
due. The revenue department disallowed the deduction, and
assessed an additional tax of $14,497.85 plus interest against plain-
tiff, which it paid under protest. Plaintiff made a timely request for
refund of the additional tax and interest. The refund was denied
and plaintiff brought this action to determine the validity of the
assessment.

In the superior court, both parties moved for summary judg-
ment, and after hearing, the court entered summary judgment for
defendant. Plaintiff appeals.

*Moore and Van Allen, by Daniel G. Clodfelter, for plaintiff
appellant.*

*Attorney General Edmisten, by Assistant Attorney General*

*Marilyn R. Rich, for defendant appellee.*

MARTIN (Harry C.), Judge.

The resolution of this appeal turns upon the meaning of the phrase "accounts payable" as it appears in N.C.G.S. 105-201. The relevant portions of the statute are:

> Accounts receivable. — All accounts receivable on December 31 of each year ... shall be subject to an annual tax ... Provided, that from the face value of such accounts receivable there may be deducted the accounts payable of the taxpayer as of the valuation date of the accounts receivable . . ..

The term "accounts payable" as used in this section shall not include:

(1)   Reserves, secondary liabilities or contingent liabilities except upon satisfactory showing that the taxpayer will actually be compelled to pay the debt or liability;

(2)   Taxes of any kind owing by the taxpayer;

(3)   Debts owed to a corporation of which the taxpayer is parent or subsidiary or with which the taxpayer is closely affiliated by stock ownership or with which the taxpayer is subsidiary of same parent corporation unless the credits created by such debts are listed if so required by law for ad valorem or property taxation, for taxation at the situs of such credits; or

(4)   Debts incurred to purchase assets which are not subject to taxation at the situs of such assets.

. . . .

The term "accounts payable" as used in this section shall be deemed to include current notes payable of the taxpayer incurred to secure funds which have been actually paid on his current accounts payable within 120 days prior to the date as of which the intangible tax return is made.

This appears to be a question of first impression in North

Carolina. It has been well briefed and ably argued by counsel. Plaintiff contends we should adopt a broad meaning of the term "accounts payable," and find that it includes any obligation, unless expressly eliminated by the statute itself, due from one person to another, whether money, goods, or services. Plaintiff argues that is the interpretation given to the term in accounting practice and introduced expert evidence supporting this approach. Plaintiff further suggests that to do otherwise would result in an unconstitutional application of the taxing statute.

Defendant would have us hold to a more traditional, narrower meaning of the disputed phrase. He urges that the statute, and administrative interpretations of it, support a finding that customer advances under contracts are not accounts payable to the payee. The secretary further states that statutory tax terms are not limited to the meaning given them by the expert practitioners in the field, and sees no constitutional defects in denying the deduction as to plaintiff's intangible tax return.

It is, of course, familiar learning that in resolving statutory construction problems, the aim is to discern the intent of the legislature. This rule applies to tax cases. *Food House, Inc. v. Coble, Sec. of Revenue*, 289 N.C. 123, 221 S.E.2d 297 (1976).

> Where the meaning of a tax statute is doubtful, it is construed against the State and in favor of the taxpayer unless a contrary legislative intent appears . . . . "In the interpretation of the statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen." *Gould v. Gould*, 245 U.S. 151, 62 L.Ed. 211, 38 S.Ct. 53 (1917). Conversely, a provision in a tax statute providing an exemption from the tax, otherwise imposed, is strictly construed against the taxpayer and in favor of the State . . . .
>
> In the absence of a clear indication to the contrary, words in a statute must be given their ordinary meaning unless they have acquired a technical significance . . . . If the statute itself contains a definition of a word used

therein, that definition controls and courts must construe
the statute as if the definition had been used in lieu of the
word. If the words of the definition itself are ambiguous,
they must be construed pursuant to the general rules of
statutory construction.

*Id.* at 135-36, 221 S.E.2d at 304-05 (citations omitted).

The article on intangible taxes does not contain a definition of
"accounts payable," although the statute lists several things that
are not included within the term. Therefore, the words must be
given their ordinary meaning unless the statute contains a clear
indication to the contrary, or the words have acquired a technical
significance. *See Food House, supra.* We find nothing in the statute
to indicate that the ordinary meaning of the term should not be
used, or that the term has acquired any technical significance
beyond that of its ordinary meaning, which is to say that the ordi-
nary meaning of the term has technical significance to some extent.

This is a tax levying article. As such it must be construed in
favor of the taxpayer and against the state. *In re Clayton-Marcus
Co.,* 286 N.C. 215, 210 S.E.2d 199 (1974). Where the statutory
scheme provides an exemption from the tax, it must be construed
against the taxpayer. *Id.* Here, the statute allows a deduction of
accounts payable. A deduction is "something that is or may be
subtracted." *Ward v. Clayton, Com'r of Revenue,* 5 N.C. App. 53, 167
S.E.2d 808 (1969), *aff'd,* 276 N.C. 411, 172 S.E.2d 531 (1970).
"Deductions are in the nature of exemptions; they are privileges,
not matters of right, and are allowed as a matter of legislative
grace. A taxpayer claiming a deduction must bring himself within
the statutory provisions authorizing the deduction. 85 C.J.S., Taxa-
tion § 1099." *Id.* at 58, 167 S.E.2d at 811. We hold the phrase in
question is a part of the statute establishing a deduction and that
plaintiff has the burden of bringing his claim within the meaning of
the deduction.

The accounting literature does not always agree on how an
item should be handled in a balance sheet presentation. W. Meigs
and C. Johnson, *Accounting, The Basis For Business Decisions*
(1962), at 11, defines accounts payable as "the liability arising from
the purchase of goods or services on credit." *See also* W. Pyle & J.
White, *Fundamental Accounting Principles* (7th ed. 1975). Custom-
er advances are given special treatment in accounting literature

and are distinguishable from accounts payable. "*Accounts payable* are the various amounts of money owed by the corporation to those with whom it does business . . . . Other current liabilities include primarily accrued expenses such as salaries and wages . . . . Also dividends payable, customer advances, and the like." B. Graham and C. McGolrick, *The Interpretation of Financial Statements* 11 (3d rev. ed. 1975) (emphasis in original). In E. Faris, Jr., *Accounting for Lawyers* (3d ed. 1975), at 65, in distinguishing prepaid insurance premiums from other advance payments, we find:

> Other types of advance payments (such as the prepayment of rent) must for tax purposes also be allocated as expenses over the period of years to which the prepayment applies.
>
> . . . .
>
> The "revenue matching" principle of good accounting requires that advance receipts of income be allocated as revenues to the several years in which goods or services will be rendered in satisfaction of the advance receipt.
>
> . . . .
>
> In one broad sense the Advance Rentals Credit represents a type of liability. There is not a liability to pay money, but there is a liability to the subtenant to permit him to use a part of the premises . . . . In a more technical sense, the credit is an unearned income to be recognized as a current income as earned.

Thus it appears that customer advances, such as received by plaintiff, are in reality unearned income. They are received by the requirements of contract in advance of performance. Plaintiff has no duty to repay the customer the amounts received; it only has a contractual obligation to construct the plant according to the terms of the contract. The duty to perform is imposed on plaintiff by reason of its contract, not because of the receipt of the customer advance. The customer advance is simply part performance by the purchaser of its contractual obligation to pay the purchase price. How plaintiff may choose to identify, describe, or carry the customer advances for its own bookkeeping purposes does not change their true nature. Nor can it control the tax liability of plaintiff. The statute itself must control in determining the levying and collection

of the tax. *See Realty Corp. v. Coble, Sec. of Revenue,* 291 N.C. 608, 231 S.E.2d 656 (1977). The Court in *Realty Corp.,* speaking of franchise taxes, stated:

> G.S. 105-122 does not authorize either the deduction of deferred income taxes from the franchise tax base or the use of generally accepted accounting principles to compute the tax. That portion of the statute which states that the tax shall be computed from the "books and records of the corporation" is not a requirement that the Commissioner follow the categorizations placed upon the information contained in the books and records. Rather, the statute authorizes the Commissioner to require such facts and information as is deemed necessary to comply with his duty to assess the franchise tax in accordance with the statute.

*Id.* at 615, 231 S.E.2d at 661.

The administrative interpretation of a tax statute may be considered by the court in its construction of the statute. *Yacht Co. v. High, Commissioner of Revenue,* 265 N.C. 653, 144 S.E.2d 821 (1965). If customer advances are accounts payable by plaintiff, then they must be accounts receivable by the party making the advance. The Department of Revenue has declined to tax customer advances as accounts receivable by the party making the advance. The Intangible Personal Property Tax Bulletin (1975), portions being introduced as evidence in this case, contains a list of items taxable as accounts receivable and deductible as accounts payable. All are items payable in money without the happening of a condition precedent.

The bulletin expressly excludes as an account payable "billings in excess of costs on uncompleted contracts." The customer advances received by plaintiff come close to being billings in excess of costs on uncompleted contracts. They are paid pursuant to uncompleted contracts, and, when received, are in excess of costs expended by plaintiff, as it has not incurred any costs with respect to the contract at that time. This administrative ruling is a close analogy to the nature of customer advances and a potent argument to disallow them as deductions for intangible tax purposes.

Although we find no North Carolina decisions on point, two cases from the state of Ohio are pertinent. In *Black-Clawson Co. v.*

*Evatt,* 139 Ohio St. 100, 38 N.E.2d 403 (1941), the court construed section 5327 of the Ohio General Code. In determining the tax due under that section, taxpayers were allowed a deduction of accounts payable from the tax base. Plaintiff had received customer advances on contracts for the manufacture of machinery and sought to deduct them as accounts payable. The Ohio court disallowed the deduction, stating:

> If there is any liability on the part of the seller to the buyer, it is assuredly contingent. Yet we must ever hark back to the reality that there is no liability until the contingency arises. That contingency is the breach of the sale contract by the seller and the resulting liability is founded not on an account but on the breach .... Obviously there is no subsisting liability until the breach occurs, for normally the seller's contractual obligation is to be discharged by the delivery of the finished product and not by cash. Even though the payment be set up on the books of the seller as an account, there would be nothing payable on it, as such, at any time.
>
> After all the test is not what is good accounting practice but what is the meaning and intent of the taxational provision ....
>
> What, then, is the correct interpretation? What is the plain meaning of the statute when viewed in the light of the object to be accomplished? ... Certain it is that if the advance payments be accounts payable, as claimed by the appellant, they are payable to the buyer and must be listed in the buyer's return as accounts receivable. The result would be that the buyer would be listing the part of the price paid as owing to and receivable by him. An interpretation which leads to that result would be an anomaly. When the language of the statute is considered in its fullness and at the same time in its plain meaning, it admits of but one interpretation. The advance payments cannot be listed as accounts payable and deducted from the sum of accounts receivable and prepaid items in determining credits.

*Id.* at 105, 38 N.E.2d at 405-06.

Likewise, in *Wright Co. v. Glander,* 151 Ohio St. 29, 84 N.E.2d

483 (1949), customer advances paid by the United States Government to plaintiff were not allowed to be deducted as accounts payable, even though a contract provision allowed the government to demand repayment of the advance without showing a breach of contract by plaintiff. The court stated:

> The advance payments were not a loan within the contemplation of the parties . . . . [W]hat the government wanted and required was not a return of the advance payments but aeronautical engines . . . .
>
> There can be no question that the unliquidated advance payments were current liabilities of Wright, but that does not mean they were current accounts payable.

*Id.* at 47, 84 N.E.2d at 491-92.

Appellant further argues that the taxing statute in question, while not unconstitutional on its face, is unconstitutional when applied to plaintiff under the facts of this case. Plaintiff makes this argument for the first time in this Court upon appeal. The record does not contain anything in the pleadings, evidence, judgment or otherwise, to indicate that any constitutional argument was presented to the trial court. The appellate court will not decide a constitutional question which was not raised or considered in the trial court. *Wilcox v. Highway Comm.,* 279 N.C. 185, 181 S.E.2d 435 (1971); *Boehm v. Board of Podiatry Examiners,* 41 N.C. App. 567, 255 S.E.2d 328, *cert. denied,* 298 N.C. 294 (1979). The record must affirmatively show that the question was raised and passed upon in the trial court. *See City of Durham v. Manson,* 285 N.C. 741, 208 S.E.2d 662 (1974); *Boehm, supra.* This is in accord with the decisions of the United States Supreme Court. *Edelman v. California,* 344 U.S. 357, 97 L. Ed. 387 (1953). Appellant, who has the duty to do so, has failed to demonstrate by the record that any constitutional question was before the trial court. In any event, we decide this case by statutory construction and would not reach any constitutional question if properly presented. *State v. Lueders,* 214 N.C. 558, 200 S.E. 22 (1938); *State v. Wallace,* 49 N.C. App. 475, 271 S.E.2d 760 (1980). We reject the argument.

We hold plaintiff is not entitled to deduct the customer advances received pursuant to its construction contracts as accounts payable under the intangible tax statute, N.C.G.S. 105-201. The entry of summary judgment in favor of defendant was proper, and it is

Affirmed.

Judges WEBB and WHICHARD concur.