CHARLES E. NELSON v. BATTLE FOREST FRIENDS MEETING, AN UNINCOR-
PORATED ASSOCIATION, AND STEVE WOOD

No. 9118SC670

(Filed 19 January 1993)

1. **Railroads § 3 (NCI3d) — abandoned railroad easement — adjoining public road — ownership of title to part of abandoned easement**

    Because a public road right-of-way was located within an abandoned railroad easement, the two adjoined, and the exception in the second sentence of N.C.G.S. § 1-44.2(a) applied to

vest title to the disputed 30-foot strip of land between the railroad tracks and the public road right-of-way in defendant church as adjacent property owner.

**Am Jur 2d, Easements § 103; Highways, Streets, and Bridges § 184.**

2. **Appeal and Error § 453 (NCI4th) — constitutional questions — issue not raised and passed upon in trial court — question not considered on appeal**

Plaintiff's argument that, if N.C.G.S. § 1-44.2(a) vests title to a designated strip of land in defendant church, the statute is unconstitutional because it divests him of his property is not considered on appeal because it does not affirmatively appear in the record that the constitutional issue was both raised and passed upon in the trial court.

**Am Jur 2d, Appeal and Error § 574.**

3. **Appeal and Error § 495 (NCI4th) — propriety of TRO — requirement that TRO exist for court to review**

In order for the Court of Appeals to review the propriety of a temporary restraining order, there must be an existing TRO presented for review.

**Am Jur 2d, Appeal and Error § 761.**

Judge ORR dissenting.

Appeal by defendants from judgment filed 24 January 1991 and amended 19 February 1991 in Guilford County Superior Court by Judge W. Steven Allen. Heard in the Court of Appeals 25 August 1992.

*Adams Kleemeier Hagan Hannah & Fouts, by M. Jay DeVaney and Trudy A. Ennis, for plaintiff-appellee.*

*Elrod & Lawing, P.A., by Frederick K. Sharpless, for defendant-appellants.*

GREENE, Judge.

Appeal by defendants Battle Forest Friends Meeting (the Church), an unincorporated association operating a church in Guilford County, and their minister Steve Wood (Wood) from grant of summary judgment in favor of plaintiff Charles E. Nelson (Nelson).

## NELSON v. BATTLE FOREST FRIENDS MEETING

[108 N.C. App. 641 (1993)]

The property at the heart of this dispute is a portion of what was formerly an easement belonging to the Southern Railway Company (SRC). SRC's tracks ran roughly north-south through Greensboro. The original easement extended 100 feet on either side from the center of the SRC tracks. The railroad tracks mark the property line between property owned by the Church and Nelson. The Church's property lies to the east of the tracks and Nelson's property to the west. Both property lines run to the center of the tracks, with the SRC easement extending 100 feet into the property of each. To the west of the tracks, crossing the land owned by Nelson, lies Old Battleground Road (OB Road), a public road which runs roughly parallel to the tracks. The railroad easement completely envelops the right-of-way of OB Road. The distance between the SRC tracks and the OB Road right-of-way is approximately thirty feet. The disputed property is this narrow strip that lies between OB Road and the SRC tracks.[1] The diagram below

NELSON PROPERTY

CHURCH PROPERTY

---

1. The Church initially contested Nelson's property line based on a deed in the Church's chain of title dated 17 November 1970, which purported to place the Church's property line at OB Road rather than at the center line of the railroad.

is closely patterned after one of Nelson's exhibits presented at trial and reflects the general location of OB Road in relation to the railroad.

SRC's attorney, by affidavit, stated that SRC ceased using the easement for railroad purposes sometime in the early 1980's. The parties agree that the tracks were removed in 1981. After the tracks were removed, Nelson mowed the grass on the property, but neither party did anything else to indicate ownership. Late in the summer of 1989, Nelson observed Dwight Osborne, a Church member, standing on the disputed property. A bulldozer was parked on the Church property. Osborne informed Nelson that the Church was going to build a driveway across the disputed property. Nelson then told Osborne that he claimed ownership of the property. At a subsequent meeting, Nelson showed Osborne and Wood his deed to the property. Unsuccessful negotiations between Nelson and Wood followed, including an offer by Nelson to sell the property to the Church. On 12 October 1990, Nelson noticed that a truckload of dirt had been spread across the disputed property. Wood was present at the Church when Nelson discovered the dirt, and upon Nelson's inquiry, Wood informed Nelson that the Church intended to go ahead with construction of the driveway.

Nelson filed a complaint for trespass and to quiet title, alleging that the Church and Wood were trespassing on the property. Two more truckloads of dirt were subsequently dumped on the property. Four days later, 21 December 1990, the superior court granted Nelson a Temporary Restraining Order (TRO) which prohibited the Church and Wood from entering the property for ten days. The TRO was later extended until 22 January 1991, the date of the hearing in superior court. Prior to hearing, all parties moved for summary judgment. Summary judgment for Nelson was granted 24 January 1991, which quieted title in Nelson and permanently enjoined the Church and Wood from trespassing on the property. The Church's and Wood's motions for summary judgment were denied. Nelson's damages claim was reserved for a later hearing on the merits. After motion by the Church and Wood, an amended judgment was filed 19 February 1991 certifying the grant of Nelson's

Nelson's chain of title dates back to 1957. The Church has now conceded Nelson's chain of title and argues in its brief only that N.C.G.S. § 144.2(a) gives it title to the disputed property.

**NELSON v. BATTLE FOREST FRIENDS MEETING**

[108 N.C. App. 641 (1993)]

motion for summary judgment on the title issue as a final judgment pursuant to N.C.G.S. § 1A-1, Rule 54.

---

The issues presented are (I) whether N.C.G.S. § 1-44.2(a) vests title to the disputed land in the Church; (II) if so, whether the provisions of N.C.G.S. 1-44.2(a) are unconstitutional; and (III) whether the question of the propriety of the trial court's grant of Nelson's request for a TRO is moot.

I

[1] N.C.G.S. § 1-44.2 controls the ownership of abandoned railroad easements by presumptively vesting ownership of the abandoned easement according to the statute. N.C.G.S. § 1-44.2(a) provides in pertinent part

> [w]henever a railroad abandons a railroad easement, all right, title and interest in the strip, piece or parcel of land constituting the abandoned easement shall be presumed to be vested in those persons . . . owning lots or parcels of land adjacent to the abandoned easement, with the presumptive ownership of each adjacent landowner extending to the centerline of the abandoned easement. In cases where the railroad easement *adjoins* a public road right-of-way, the adjacent property owner's right, title and interest in the abandoned railroad easement shall extend to the nearest edge of the public road right-of-way.

N.C.G.S. § 1-44.2(a) (Supp. 1992) (emphasis added). Neither party disputes, and we therefore assume, that ownership of the abandoned easement is controlled by N.C.G.S. § 1-44.2(a). Furthermore, there is no dispute that record title to the property is in Nelson.

The Church argues, however, that the second sentence of N.C.G.S. § 1-44.2(a) vests title to the disputed property in it. The Church is correct if the abandoned SRC easement "adjoins" the OB Road right-of-way. If it does not, the exception in the second sentence of N.C.G.S. § 1-44.2(a) does not apply, and ownership of the strip remains vested in Nelson. Nelson contends that in order for the abandoned easement to "adjoin" the OB Road right-of-way the two must share a common boundary. The Church contends that the two "adjoin" if the abandoned easement and the OB Road right-of-way touch at some point.

In applying statutes we must presume that the legislature intended that the words used in statutes be given the meaning they have in ordinary speech. *LaFayette Transp. Serv., Inc. v. County of Robeson*, 283 N.C. 494, 500, 196 S.E.2d 770, 774 (1973). Courts use the dictionary to determine the ordinary meaning of words. *State v. Martin*, 7 N.C. App. 532, 533, 173 S.E.2d 47, 48 (1970). Objects "adjoin" when they are "close to or in contact with one another." *Webster's New Collegiate Dictionary* 56 (9th ed. 1984). Therefore, the word "adjoin," as used in the second sentence of N.C.G.S. § 1-44.2(a), applies whenever the abandoned easement touches a public road right-of-way, whether within the abandoned easement or at its boundary.

Because the OB Road right-of-way is located within the abandoned easement, they adjoin, and the exception in the second sentence of N.C.G.S. § 1-44.2(a) applies. Title to the disputed strip therefore is vested in the Church as adjacent property owner. Accordingly, summary judgment in favor of Nelson was error.

## II

[2] Nelson argues, in the alternative, that if N.C.G.S. § 1-44.2(a) vests title to the disputed strip in the Church, the statute is unconstitutional because it divests him of his property. Specifically, Nelson argues that divesting him of his property violates Article I, Section 19 of the North Carolina Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. However, because it does not affirmatively appear in the record that the constitutional issue was both raised and passed upon in the trial court, we will not address it for the first time on appeal. *Midrex Corp. v. Lynch*, 50 N.C. App. 611, 618, 274 S.E.2d 853, 858, *disc. rev. denied*, 303 N.C. 181, 280 S.E.2d 453 (1981). Although Nelson did raise the constitutional issue in the trial court, the record does not indicate that the trial court considered the issue in granting summary judgment for Nelson.

## III

[3] The Church and Wood contend that the grant of a TRO without a showing of immediate and irreparable injury by Nelson was improper. They also contend that the judge's failure to define the injury and state why it was irreparable was error under North Carolina Rule of Civil Procedure 65(b). We need not reach these issues because the propriety of granting the TRO is a moot question.

**NELSON v. BATTLE FOREST FRIENDS MEETING**

[108 N.C. App. 641 (1993)]

In order for this court to review the propriety of a TRO there must be an existing TRO presented for review. *State ex rel. Moore v. Doe*, 19 N.C. App. 131, 136, 198 S.E.2d 236, 240, *cert. denied*, 284 N.C. 121, 199 S.E.2d 663 (1973) (appeal from grant of TRO dismissed because TRO terminated slightly thirty days before appeal docketed). The TRO expired by its own terms on 22 January 1991, thirty days after it was issued, and the appeal is therefore dismissed.

We also dismiss Wood's appeal of the trial court's denial of his partial summary judgment motion. The denial of a motion for summary judgment is a nonappealable interlocutory order. *Watson Ins. Agency, Inc. v. Price Mechanical, Inc.*, 106 N.C. App. 629, 631, 417 S.E.2d 811, 812 (1992). This is so "even if the trial court has [as it did here] attempted to certify it for appeal under Rule 54(b) of the North Carolina Rules of Civil Procedure." *Henderson v. LeBauer*, 101 N.C. App. 255, 264, 399 S.E.2d 142, 147, *disc. rev. denied*, 328 N.C. 731, 404 S.E.2d 868 (1991).

In conclusion, summary judgment in favor of Nelson is reversed, and this case is remanded to the superior court for consideration of the question of the constitutionality of N.C.G.S. § 1-44.2(a).

Reversed and remanded.

Judge WELLS concurs.

Judge ORR dissents with separate opinion.

Judge ORR dissenting.

I respectfully dissent on the grounds that my interpretation of N.C. Gen. Stat. § 1-44.2 does not divest Nelson of ownership of the property in dispute. Summary judgment for Nelson is, therefore, proper, and I would affirm the ruling of the trial court.

"When property is taken for railroad purposes, the fee remains with the owner. . . ." *Sparrow v. Tobacco Co.*, 232 N.C. 589, 593, 61 S.E.2d 700, 703 (1950).

[W]hen land is devoted to railroad purposes it is immaterial whether the railway company acquired it by virtue of an easement, by condemnation, right-of-way deed, or other conveyance.

If or when it ceases to be used for railway purposes, the land concerned returns to its prior status as an integral part of the free-hold to which it belonged prior to the subjection to use for railway purposes.

*Harvest Queen Mill & Elevator Co. v. Sanders*, 370 P.2d 419, 423 (1962). I do not believe the Legislature intended to change this result by enacting G.S. § 1-44.2, especially in light of the wording contained in subsection (b) of this statute.

Here the parties agree that the railroad right-of-way was abandoned no later than 1982 and, therefore, the railroad's easement was extinguished. Title to the property within the easement therefore vested in the adjacent landowners extending to the centerline of the abandoned easement, in this case Nelson whose chain of title to the land extends back to 1970.

The statute in question, G.S. § 1-44.2, was passed in 1987 and specifically did not "apply to pending litigation." 1987 N.C. Sess. Laws ch. 433 § 2. Nelson thus had title vested in him when the statute was passed. I cannot imagine that the General Assembly intended for a property owner to be divested of title to land by the enactment of this statute. The prospective application of the statute is one matter, but to reach back and divest a property owner of title to land acquired by the acknowledged abandonment of railroad easement would be neither fair nor logical, and though not properly raised in this case a violation of our state and federal Constitutions.