LOUIS BARBER, WADE BARBER, AND FRANK BARBER, Plaintiffs v. CONTINENTAL GRAIN COMPANY AND LEBANON CHEMICAL CORPORATION, Defendants, AND LOUIS BARBER, WADE BARBER, AND FRANK BARBER, Plaintiffs v. TRI-PORT TERMINALS, INC., Defendant

No. COA95-36

(Filed 5 November 1996)

1. **Agriculture § 24 (NCI4th)— action on diluted fertilizer— sample not from approved source—summary judgment for defendants**

The trial court did not err by entering summary judgment for defendants where plaintiffs brought an action for breach of implied warranty of merchantability, fraud, unfair and deceptive trade practices, and negligence arising from plaintiffs' use of fertilizer on a corn crop which had an atypically low yield. A sample from fertilizer tanks on plaintiffs' farm taken and tested unofficially by the North Carolina Department of Agriculture was prop-

BARBER v. CONTINENTAL GRAIN CO.

[124 N.C. App. 310 (1996)]

erly disqualified as evidence because it did not comply with the provisions of N.C.G.S. § 106-662(b)(4) in that the statute requires samples to be obtained from a source approved by the Commissioner of Agriculture and the "unofficial" sample here was obtained from a storage tank on plaintiffs' farm some time following delivery, which is not an approved source under the Commissioner's rule. There was thus no competent evidence before the trial court that plaintiffs had fulfilled the testing prerequisite for suit set out in N.C.G.S. § 106-662(e)(4).

**Am Jur 2d, Agriculture §§ 52, 57.**

**2. Appeal and Error §§ 367, 147 (NCI4th)— motion to amend record—addition of assignments of error denied—argument not considered**

Plaintiffs' argument regarding compliance with the Fertilizer Law in collecting samples as a precondition to claims for fraud, unfair and deceptive trade practices, negligence, and breach of express warranty was not discussed, beyond observing that plaintiffs misinterpret *Potter v. Tyndall*, 22 N.C. App. 129, where plaintiffs motion to amend the record to include assignments of · error upon which the argument is based was denied.

**Am Jur 2d, Appellate Review § 508.**

**3. Pleadings § 369 (NCI4th)— futile motion to amend complaint denied—no error**

Plaintiffs' motion to amend their complaint to add a claim for breach of express warranty against defendant Lebanon was properly denied where amendment would have been futile in that the claim would have been based on a nitrogen concentration much lower than warranted, but plaintiffs did not meet the requirements of N.C.G.S. § 106-662.

**Am Jur 2d, Pleadings § 307.**

**4. Appeal and Error § 150 (NCI4th)— constitutional argument—not raised at trial—not considered on appeal**

Plaintiffs' constitutional arguments regarding testing requirements for instituting suit under the Fertilizer Law were not addressed where no constitutional claim appears in plaintiffs' pleadings or in any other documentation filed with the trial court prior to its ruling.

**Am Jur 2d, Appellate Review § 36.**

BARBER v. CONTINENTAL GRAIN CO.

[124 N.C. App. 310 (1996)]

Appeal by plaintiffs from orders entered 20 May 1994 and 6 June 1994 by Judge William C. Griffin, Jr., in Martin County Superior Court. Heard in the Court of Appeals 29 January 1996.

*Marvin Schiller and Law Offices of Marvin Blount, Jr., by Marvin K. Blount, Jr., for plaintiff-appellants.*

*Poyner & Spruill, L.L.P., by George L. Simpson, III, for defendant-appellee Continental Grain Company.*

*Battle, Winslow, Scott & Wiley, P.A., by M. Greg Crumpler, for defendant-appellee Lebanon Chemical Corporation.*

*Womble Carlyle Sandridge & Rice, PLLC, by Johnny M. Loper, for defendant-appellee Tri-Port Terminals, Inc.*

JOHN, Judge.

Plaintiffs appeal the trial court's grant of defendants' motions for summary judgment on plaintiffs' claims of breach of implied warranty of merchantability, fraud, unfair and deceptive trade practices, and negligence. We affirm the trial court.

Pertinent facts and procedural information are as follows: during the summer of 1990, plaintiffs Louis, Frank, and Wade Barber leased land in Hyde County upon which they planted approximately 2200 acres of corn. Between 21 April and 22 June 1990, defendant Lebanon Chemical Corporation (Lebanon) delivered some 340 tons of fertilizer, composed of a liquid urea ammonium nitrate solution (UAN), to plaintiffs' farm for use on the corn crop. UAN was pumped from Lebanon's delivery trucks into storage tanks placed by the company on the farm property.

The UAN delivered by Lebanon was imported from Bulgaria by defendant Continental Grain Company (Continental) and, upon arrival in Norfolk, Virginia, was held in a storage facility operated by defendant Tri-Port Terminals, Inc. (Tri-Port). The UAN was imported at a concentration of 32% nitrogen; however, plaintiffs ordered a 30% nitrogen solution, and Tri-Port diluted the UAN to this level per Lebanon's instructions by adding water. Plaintiffs allege the fields upon which the UAN was applied yielded an atypically low amount of bushels per acre. Tests conducted by the North Carolina Department of Agriculture (NCDA) revealed plaintiffs' corn suffered from insufficient nitrogen.

In late June or early July 1990, Louis Barber telephoned James R. Stevens (Stevens), Fertilizer Administrator for the NCDA from 1974 until his retirement 1 December 1991, and requested sampling and testing of the UAN contained in the various tanks on plaintiffs' farm. Under the North Carolina Fertilizer Law (the Fertilizer Law), N.C.G.S. §§ 106-655 *et seq.*, the Commissioner of Agriculture (the Commissioner) is authorized to test commercial fertilizers sold in North Carolina to ensure their compliance with the provisions of the Fertilizer Law. *See* N.C.G.S. § 106-658 (1995) and N.C.G.S. § 106-662 (1995). Stevens, as Fertilizer Administrator, was the Commissioner's designated agent for test administration purposes.

Stevens agreed to send an inspector to plaintiffs' farm, but cautioned Barber that any samples would be "unofficial," as Stevens had adopted a rule mandating that samples taken for the purpose of enforcing the Fertilizer Law be taken only from:

> (a) containers located on the manufacturer's premises (b) vehicles used to transport the fluid fertilizer from the manufacturer to the distributor (c) containers located on the premises of the distributor and (d) vehicles owned by the distributor en route to the consumer.

By affidavit, Stevens explained his rationale for promulgating the rule:

> It was the policy of the Commissioner not to take official samples of fluid fertilizers sold in bulk from storage tanks or other containers located on the consumer's premises, because of the risk of contamination of the fluid fertilizer after it was delivered into the consumer's custody and control, *i.e.*, there was no way to be certain that fluid fertilizers sold in bulk remained in their original "as manufactured" condition once they were beyond the custody and control of the manufacturer or distributor. If an official sample reveals that a commercial fertilizer is deficient in the guaranteed analysis of any ingredient, the Commissioner is required by the North Carolina Commercial Fertilizer Law to impose a penalty on the manufacturer. Given the risk of contamination, it was neither fair nor reasonable to impose penalties based on bulk fluid fertilizer samples taken "on the farm," and no official samples of fluid fertilizer sold in bulk were taken "on the farm" from the mid-1970's through December 1, 1991.

In a 31 July 1990 letter, Stevens notified plaintiffs that fertilizer in one of the tanks tested contained a nitrogen concentration of only

18.1%. However, Stevens again reiterated that the sample was "unofficial" and for informational purposes only.

Based upon their claim of insufficient nitrogen concentration in the UAN, plaintiffs instituted suit 28 March 1991 against Continental for breach of implied warranty of merchantability, fraud, and unfair and deceptive trade practices. Continental filed answer and plaintiffs filed an amended complaint 2 October 1991, including identical claims against Lebanon. In February 1993, plaintiffs moved to amend their complaint to allege a breach of express warranty claim against Lebanon. Thereafter, plaintiffs instituted a separate action against Tri-Port, containing claims of breach of implied warranty of merchantability, fraud, unfair and deceptive trade practices, and negligence. The cases were consolidated by consent order dated 15 October 1993.

Defendants' subsequent motions for summary judgment and plaintiffs' motion to amend were heard 22 April 1994. On 20 May 1994, the trial court entered an order allowing each defendant's motion for summary judgment. On 6 June 1994, plaintiffs' motion to amend was denied. Plaintiffs filed notice of appeal to this Court 15 June 1994.

[1] The issue on appeal is whether the trial court properly interpreted N.C.G.S. § 106-662 as precluding each of plaintiffs' claims against defendants. We hold the trial court did not err.

G.S. § 106-662(e)(4) provides:

No suit for damages claimed to result from the use of any lot of mixed fertilizer or fertilizer material may be brought unless it shall be shown by an analysis of a sample taken and analyzed in accordance with the provisions of this Article, that the said lot of fertilizer as represented by a sample or samples taken in accordance with the provisions of this section does not conform to the provisions of this Article with respect to the composition of the mixed fertilizer or fertilizer material, unless it shall appear to the Commissioner that the manufacturer of the fertilizer in question has, in the manufacture of other goods offered in this State during such season, employed such ingredients as are prohibited by the provisions of this Article, or unless it shall appear to the Commissioner that the manufacturer of such fertilizer has offered for sale during that season any kind of dishonest or fraudu-

lent goods or unless it shall appear to the Commissioner that the manufacturer of the fertilizer in question, or a representative, agent or employee of the manufacturer, has violated any provisions of G.S. 106-663.

In this context, Stevens' affidavit stated as follows:

Neither I nor the Commissioner had any information that Continental Grain Company, Lebanon Chemical Company, or Tri-Port Terminals, Inc. employed any ingredients prohibited by the North Carolina Commercial Fertilizer Law in the manufacture of goods offered for sale or distribution in North Carolina during the 1990 season, or that they offered for sale during that season any kind of dishonest or fraudulent goods, or that they or their representatives, agents, or employees had violated any of the provisions of N.C.G.S. 106-663.

These statements of Stevens were uncontradicted. In order to maintain their claims against defendants, therefore, plaintiffs were obligated by the terms of G.S. § 106-662(e)(4) to show

by an analysis of a sample taken and analyzed in accordance with the provisions of this Article, that [the fertilizer in question] [did] not conform to the provisions of this Article with respect to [its] composition.

Examination of G.S. § 106-662, the section of the Fertilizer Law dealing with sampling, inspection, and testing, reveals two approved methods for collection of fertilizer samples. First, G.S. § 106-662(e) provides that a *consumer* may draw a sample upon notice to the manufacturer or seller and under specified conditions. There is no contention in the case *sub judice* that plaintiffs availed themselves of the sampling provisions set out in G.S. § 106-662(e). Second, under G.S. § 106-662(b), the *Commissioner or his agent* may draw a sample, and may do so without notice to the manufacturer or seller. Plaintiffs insist the standards of G.S. § 106-662(b) were met regarding the testing at issue, and thus we address this section in detail.

G.S. § 106-662(b) mandates certain procedures by which the Commissioner may secure an "official sample" of fertilizer. *See* N.C.G.S. § 106-657(15) (1995). Subsection (1) dictates the amount of fertilizer which must be analyzed and the requisite number of containers to be sampled per lot. Subsection (2) prescribes the methodology to be employed in drawing the sample.

The remainder of G.S. § 106-662(b) states:

(3) The Board of Agriculture may modify the provisions of this subsection to bring them into conformity with any changes that may hereafter be made in the official methods of and recommendations for sampling commercial fertilizers which shall have been adopted by the Association of Official Analytical Chemists or by the Association of American Plant Food Control Officials. Thereafter, such methods and recommendations shall be used in all sampling done in connection with the administration of this Article in lieu of those prescribed in subdivisions (1) and (2) of this subsection.

(4) All samples taken under the provisions of this section shall be taken from original unbroken bags or containers, the contents of which have not been damaged by exposure, water or otherwise; provided, that any commercial fertilizer offered for sale, sold or distributed in bulk may be sampled in a manner approved by the Commissioner.

(5) The Commissioner shall refuse to analyze all samples except those taken under the provisions of this section and no sample, unless so taken, shall be admitted as evidence in the trial of any suit or action wherein there is called into question the value or composition of any lot of commercial fertilizer distributed under the provisions of this Article.

(6) In the trial of any suit or action wherein there is called in question the value or composition of any lot of commercial fertilizer, a certificate signed by the fertilizer chemist and attested with the seal of the Department of Agriculture, setting forth the analysis made by the chemist of the Department of Agriculture, of any sample of said commercial fertilizer, drawn under the provisions of this section and analyzed by them under the provisions of the same, shall be prima facie proof that the lot of fertilizer represented by the sample was of the value and constituency shown by said analysis. And the said certificate of the chemist shall be admissible in evidence.

Plaintiffs maintain the test results received from Stevens constituted an "official sample" which satisfied the statutory prerequisites for initiation of suit against defendants and admissibility into evidence at subsequent court proceedings. Plaintiffs first point to the affidavit of Danny Alton Turner (Turner), an NCDA fertilizer inspec-

BARBER v. CONTINENTAL GRAIN CO.

[124 N.C. App. 310 (1996)]

tor, reciting that he took fertilizer samples from storage tanks on plaintiffs' farm

> in accordance with the sampling methods of the Association of Official Analytical Chemists [AOAC], which have been endorsed by the Association of American Plant Food Control Officials.

In addition, plaintiffs reference the affidavit of George Winstead, a fertilizer chemist for the NCDA, stating he analyzed the samples drawn by Turner using the

> official methods of analysis adopted by the Board of Agriculture in conformance with laboratory practices and methods of the [AOAC].

Both affidavits are attested with the seal of the NCDA.

Plaintiffs contend that since the sample reflecting an 18.1% nitrogen concentration was drawn in accordance with procedures adopted by the AOAC, the requirements of 106-662(b)(3) were satisfied. Moreover, plaintiffs continue, since the chemical analysis report concerning the sample was signed by fertilizer chemist Winstead and attested with the seal of the NCDA, the report was admissible in evidence under 106-662(b)(6).

Notwithstanding, in order for the report of a chemical analysis to be admissible into evidence, the sample upon which the report is based must be drawn "under [all] the provisions of this section," G.S. §§ 106-662(b)(5) & (6), and the record does not reflect plaintiffs' compliance with G.S. § 106-662(b)(4).

While G.S. §§ 106-662(b)(1) & (2) & (3) pertain to the *quantity* of sample required to be drawn and to the *methodology* to be employed in taking a sample, G.S. § 106-662(b)(4) addresses the *source* of a sample:

> All samples taken under the provisions of this section shall be taken from original unbroken bags or containers, the contents of which have not been damaged by exposure, water or otherwise; provided, that any commercial fertilizer offered for sale, sold or distributed in bulk may be sampled in a manner approved by the Commissioner.

"Bulk fertilizer" is defined by the Fertilizer Law as "a commercial fertilizer distributed in non-package form." N.C.G.S. § 106-657(2). The 340 tons of the liquid fertilizer UAN at issue in the case *sub judice*

**BARBER v. CONTINENTAL GRAIN CO.**

[124 N.C. App. 310 (1996)]

were transported by tanker trucks to storage tanks on plaintiffs' farm and thus qualify as "bulk fertilizer," plaintiffs in any event not contending otherwise.

Under G.S. § 106-662(b)(4), samples of fertilizer distributed in bulk are to be obtained in a "manner," that is, in the context of the subsection, from a *source*, "approved by the Commissioner." At this juncture, the rule promulgated by Stevens, designated agent of the Commissioner, and in effect at the time plaintiffs' samples were taken, bears repetition. It directed that samples of fluid bulk fertilizer were to be drawn from:

> (a) containers located on the manufacturer's premises (b) vehicles used to transport the fluid fertilizer from the manufacturer to the distributor (c) containers located on the premises of the distributor and (d) vehicles owned by the distributor en route to the consumer.

By contrast, the 18.1% nitrogen content sample was obtained from a storage tank on plaintiffs' farm some time following delivery of the UAN, not an approved source under the Commissioner's rule, and therefore did not comply with the "manner approved by the Commissioner." *See* G.S. § 106-662(b)(4).

Plaintiffs insist that compliance with G.S. § 106-662(b) does not require observance of a policy enunciated by an agent, the Fertilizer Administrator, under authority of the Commissioner. We disagree. The express terms of G.S. § 106-662(b)(4) encompass the directive of the Commissioner within its specified requirements; hence plaintiffs failed to satisfy the statutory criteria.

In sum, the 18.1% nitrogen sample did not comply with the provisions of G.S. § 106-662(b) and accordingly was disqualified as evidence "in the trial of [the] suit or action wherein there [was] called into question the value or composition," G.S. § 106-662(b)(5), of the UAN purchased by plaintiffs. There thus being no competent evidence before the trial court that plaintiffs had fulfilled the testing prerequisite for suit set out in G.S. § 106-662(e)(4), defendants met their summary judgment burden of demonstrating "that an essential element of the opposing party's claim is nonexistent," *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 29, 209 S.E.2d 795, 798 (1974), and the trial court did not err by allowing defendants' motions.

[2] Plaintiffs alternatively contend that in the event we hold, as we have, that they failed to comply with the Fertilizer Law in collection

**BARBER v. CONTINENTAL GRAIN CO.**

[124 N.C. App. 310 (1996)]

of the nitrogen deficient sample, such compliance was not a precondition to their claims of fraud, unfair and deceptive trade practices, negligence, and breach of express warranty, and only precluded their claim for breach of implied warranty of merchantability. We note plaintiffs' motion to amend the record to include assignments of error upon which this argument is based was denied 15 May 1995 by order of this Court. We therefore decline to discuss further plaintiffs' alternative argument, *see* N.C.R. App. P. 10(a) (scope of appellate review limited to consideration of assignments of error set out in the record on appeal), save to observe plaintiffs misinterpret this Court's holding in *Potter v. Tyndall*, 22 N.C. App. 129, 205 S.E.2d 808, *cert. denied,* 285 N.C. 661, 207 S.E.2d 762 (1974), upon which they rely. *See Potter,* 22 N.C. App. at 133, 205 S.E.2d at 811 ("When a litigant alleges that he has been damaged by the use of inherently defective fertilizer, he must comply with [statutory prerequisites]").

**[3]** As for plaintiffs' contention that their motion to amend the complaint to add a claim for breach of express warranty against Lebanon was erroneously denied, we note a motion to amend is properly denied where the amendment would be futile. *Martin v. Hare*, 78 N.C. App. 358, 361, 337 S.E.2d 632, 634 (1985). Plaintiffs' motion indicated the express warranty claim was to be based on the theory that Lebanon expressly warranted the fertilizer it delivered was of a 30% nitrogen concentration, when in reality the concentration was much lower. As we have held plaintiffs failed to meet the requirements of G.S. § 106-662, amendment of their complaint to add an express warranty claim against Lebanon would have been futile. The trial court therefore did not err by denying plaintiffs' motion to amend.

**[4]** Finally, plaintiffs assert that the sampling and testing requirements for instituting suit under the Fertilizer Law violated their equal protection and due process rights under the federal and state constitutions. However,

> because it does not affirmatively appear in the record that the constitutional issue was both raised and passed upon in the trial court, we will not address it for the first time on appeal.

*Nelson v. Battle Forest Friends Meeting*, 108 N.C. App. 641, 646, 425 S.E.2d 4, 7, *rev'd on other grounds*, 335 N.C. 133, 436 S.E.2d 122 (1993).

No constitutional claim, state or federal, appears in plaintiffs' pleadings or in any other documentation filed with the trial court prior to its ruling. While the argument of plaintiffs' counsel at pages

81 and 82 of the transcript of the summary judgment hearing does mention the phrase "unconstitutional," neither the trial court's "Order Granting Defendants' Motions for Summary Judgment" nor "the record . . . indicate that the trial court considered the issue in granting summary judgment." *Nelson*, 108 N.C. App. at 646, 425 S.E.2d at 7. Accordingly, we do not address plaintiffs' constitutional arguments.

To summarize, the trial court did not err by entering summary judgment in favor of defendants. Plaintiffs' assignment of error to denial of their motion to amend the complaint is rejected. Plaintiffs' remaining contentions are not properly before us.

Affirmed.

Judges Johnson and Greene concur.