**PEACE RIVER ELECTRIC COOPERATIVE v. WARD TRANSFORMER CO.**

[116 N.C. App. 493 (1994)]

PEACE RIVER ELECTRIC COOPERATIVE, INC., Plaintiff and Third-Party Plaintiff v. WARD TRANSFORMER COMPANY, INC., Defendant, and NATIONWIDE MUTUAL INSURANCE COMPANY and ELECTRO-TEST CORPORATION, Third-Party Defendants

No. 9210SC847

(Filed 18 October 1994)

1. **Liens § 9 (NCI4th)— amount of lien alleged in complaint not challenged—order to subcontractor to release property proper**

The clerk of court did not err in ordering defendant subcontractor, who repaired plaintiff's transformer under an agreement with the contractor, to relinquish possession of the transformer upon plaintiff owner's tender of $100.00 pursuant to N.C.G.S. § 44A-2(a)(3), since N.C.G.S. § 44A-3 explicitly provides that the amount set forth in the complaint of the party seeking possession shall be deemed to be the amount of the asserted lien unless that allegation is challenged in the statutorily specified manner, and defendant failed to file within three days following service of plaintiff's summons and complaint a statement alleging a contrary amount of lien.

**Am Jur 2d, Mechanics' Liens §§ 239 et seq.**

2. **Liens § 9 (NCI4th)— repairer of equipment as legal possessor and not owner—applicability of statute—appropriate amount of lien**

Third-party defendant Electro-Test, which contracted to repair plaintiff's transformer, was a "legal possessor" rather than an "owner" of plaintiff's transformer, and defendant subcontractor, which actually repaired the transformer, was an independent contractor rather than an agent of third-party defendant; therefore, the clerk of court properly determined the amount of defendant's lien to be limited by N.C.G.S. § 44A-2(a)(3) to $100.00.

**Am Jur 2d, Mechanics' Liens §§ 65 et seq., 239 et seq.**

**Right of subcontractor's subcontractor or materialman, or of materialman's materialman, to mechanic's lien. 24 ALR4th 963.**

PEACE RIVER ELECTRIC COOPERATIVE v. WARD TRANSFORMER CO.

[116 N.C. App. 493 (1994)]

**3. Appeal and Error § 150 (NCI4th)— statute providing constitutionally adequate lien—failure to raise constitutionality question**

There was no merit to defendant subcontractor's contention that N.C.G.S. § 44A-2 failed to provide a constitutionally adequate lien, since defendant did not challenge the constitutionality of the statute during any of the proceedings before the trial court; by limiting to $100.00 the amount of the lien allowed for a lienor who deals with a legal possessor of certain property, the statute protects an owner from having to pay two contractors for one set of services, and defendant's arguments presented no basis for upsetting the presumption of constitutionality in favor. of this legislative balance of adverse interests; and defendant was statutorily entitled to contest the $100.00 amount of the lien asserted by the owner in its complaint but failed to do so.

Am Jur 2d, Appeal and Error § 574.

**4. Liens § 9 (NCI4th)— failure of subcontractor to contest amount of lien—assertion of equitable remedy barred**

Because of defendant subcontractor's failure to contest the amount of lien claimed by plaintiff in the manner prescribed by statute, it was disqualified from asserting any equitable remedy; furthermore, because plaintiff and its insurer established the nonexistence of an essential element of defendant's counterclaim for breach of an implied contract, i.e., that any alleged enrichment of plaintiff was unjust, summary judgment on that claim was properly allowed.

Am Jur 2d, Mechanics' Liens §§ 239 et seq.

Appeal by defendant from order entered 27 April 1992 by Judge Narley L. Cashwell in Wake County Superior Court and order entered 1 May 1992 by Judge Gregory A. Weeks in Wake County Superior Court. Heard in the Court of Appeals 17 June 1993.

*Crisp, Davis, Schwentker, Page, Currin & Nichols, by Cynthia M. Currin, for plaintiff-appellee.*

*Brent E. Wood, for defendant-appellant.*

*Bailey & Dixon, by Dorothy V. Kibler and Lauren A. Murphy, for third-party defendant-appellee.*

PEACE RIVER ELECTRIC COOPERATIVE v. WARD TRANSFORMER CO.

[116 N.C. App. 493 (1994)]

JOHN, Judge.

Defendant Ward Transformer Company, Inc. (Ward) appeals dismissal of its counterclaims. A first order, dated 27 April 1992, entered judgment on the pleadings in favor of plaintiff Peace River Electric Cooperative, Inc. (Peace River) on Ward's negligence claim and in favor of third-party defendant Nationwide Mutual Insurance Company (Nationwide) on the derivative negligence claim brought against it by Peace River. A second order, entered 1 May 1992, granted summary judgment to Peace River on Ward's remaining claim for breach of an implied contract and to Nationwide on Peace River's third-party implied contract claim. In the latter order, the court also affirmed certain prior orders issued by the Wake County Clerk of Superior Court.

In its argument before this Court, Ward asserts statutory entitlement to a mechanics' lien for the full extent of its claim for payment. In addition, Ward alleges the trial court erred by denying its request for a continuance of the hearing on Peace River's motion for judgment on the pleadings. We are unpersuaded by Ward's contentions.

Pertinent procedural and factual background is as follows: Peace River is a non-profit rural electric cooperative based in Wauchula, Florida. On 7 May 1989, a Peace River 12 MVA transformer was vandalized in Bowling Green, Florida. Peace River promptly notified its insurer, Nationwide, and received assurances from the latter's agent Robert Newsome and claims adjuster Delores Sill (Sill) that damage to the transformer was covered by Peace River's insurance policy. After discussing available options, Peace River and Nationwide agreed the former would "choose a contractor for an estimate of repairs to the transformer" which would be provided either to Peace River or directly to Nationwide.

Joseph Hegwood (Hegwood), a Peace River engineer, contacted Electro-Test Corporation (Electro-Test) to obtain a preliminary repair estimate. At this time, Harold Murphree (Murphree), President of Electro-Test, informed Hegwood that Electro-Test could repair the transformer, but that it would be necessary to subcontract part of the work to Ward. Hegwood "had no problem with Ward doing the work."

Contractual negotiations with Electro-Test for the repair of Peace River's transformer were handled exclusively by Nationwide's agent Sill. In correspondence between Murphree and Sill, the total final cost was set at $153,607.00; Sill thereafter authorized Electro-Test to commence work on the transformer and Nationwide advanced Electro-

Test a deposit of half the total repair costs "up front." Pursuant to the contract executed by Nationwide and Electro-Test, Peace River shipped the transformer to Electro-Test's plant in Chattanooga, Tennessee, issuing a "purchase order" for the work on 11 May 1989.

Thereafter, Electro-Test officially subcontracted with Ward to perform certain repairs upon Peace River's transformer and shipped the transformer to Ward's plant in Raleigh, North Carolina. The terms of the agreement were later revised in a document dated 20 July 1989. Ultimately, Electro-Test was to pay Ward $97,000.00 upon the latter's delivery of the repaired transformer.

In mid-September 1989, upon Nationwide's inquiry, Electro-Test indicated the transformer would be available around 15 October 1989. In late November, Murphree informed Sill repair had been accomplished and requested payment of the balance due. To that end, on 30 November Sills issued a Nationwide check in the amount of $76,803.50 payable to the order of Electro-Test. Meanwhile, having completed its contractual obligation to Electro-Test, Ward issued invoices directly to Electro-Test in the amount of $97,000.00 plus accumulated interest for repair of the Peace River transformer.

However, Electro-Test forwarded no payment to Ward. Correspondence between the two companies reveals an on-going dispute concerning past due bills for unrelated work. In a 19 March 1990 letter to Ward, Murphree demanded payment of the earlier unpaid invoices, acknowledged Electro-Test owed Ward $97,000.00 for repair of the Peace River transformer, and requested immediate release of the transformer. The request was not honored, however, and by letter dated 16 May 1990 Ward advised Murphree that if Electro-Test failed to tender $97,000.00 within ten days, Ward would sell or salvage the transformer to cover its costs. Despite Nationwide's payment to Electro-Test for repair of the transformer several months earlier, Electro-Test persisted in its failure to remit any sum to Ward. In the interim, an attorney for Peace River had written Murphree demanding immediate delivery of the transformer. On 31 May 1990, Sills wrote Murphree in a similar vein, setting a 15 June 1990 deadline.

On or about 4 June 1990, Ward served Peace River by registered mail with a Notice of Intent to Enforce Lien pursuant to N.C. Gen. Stat. § 44A-4 (1989 & Cum. Supp. 1993). As authorized by the statute, Peace River thereafter timely sought a judicial hearing to determine the validity of Ward's asserted lien, properly serving Ward with notice thereof. *See* G.S. § 44A-4(b)(2).

In addition, on 13 June 1990 Peace River filed the instant civil action, seeking possession of the transformer. *See* G.S. § 44A-4(a). In its complaint, Peace River alleged it held legal title to the transformer; that Electro-Test was a "legal possessor" of the transformer; and that because Ward had dealt directly with a legal possessor as opposed to an owner of the transformer, the amount of any lien asserted by Ward was properly limited to $100.00 under N.C. Gen. Stat. § 44A-2(a)(3) (1989). Peace River thereafter tendered $100.00 to the Wake County Clerk of Superior Court and requested immediate possession of its transformer from Ward. The latter filed no contrary statement of the amount of lien within three days. *See* G.S. § 44A-4(a).

On 2 July 1990, the matter came on for hearing before the Clerk, who, by order issued that same date, determined as follows:

> Peace River contracted with Electro-Test Corporation of Chattanooga, Tennessee to repair the transformer. Electro-Test then subcontracted with Ward to perform some portion of or all of the repairs.

> Peace River properly served Ward with a copy of a Summons and Complaint on June 13, 1990. The complaint requested immediate possession of the transformer and stated the correct amount of the lien to be $100, *which was undisputed.* Defendant Ward has not within three days after the service of the summons and complaint contested the amount of the lien. Accordingly, the amount of the lien is deemed to be $100. The Plaintiff, Peace River, having paid into court the amount of the lien, $100, and having requested immediate possession of its property, a 12MVA three phase transformer . . . , all in accordance with GS § 44A-4(a), it is hereby

> DECLARED AND ORDERED that Defendant Ward Transformer Company, Inc. hereby relinquish control and possession of the transformer to the Plaintiff Peace River Electric Cooperative, Inc., the lawful and rightful owner of said transformer.

(Emphasis added). Ward promptly filed a motion to reconsider which was denied by order filed 10 July 1990.

In its 5 July 1990 answer to Peace River's complaint herein, Ward asserted counterclaims based upon the alleged negligence of, and breach of implied contract by, Peace River. In response, Peace River denied liability and named Nationwide third-party defendant for indemnification in the event Peace River was held liable to Ward in

any amount. Peace River also set out in its reply a third-party complaint against Electro-Test. Nationwide filed answer to Peace River's third-party complaint on 25 March 1991, denying liability and also cross-claiming against Electro-Test under a theory of unjust enrichment.

Peace River and Nationwide obtained default judgments against Electro-Test on 24 October 1990 and 6 June 1991, respectively. Electro-Test subsequently filed for bankruptcy, obtaining an automatic stay of all legal proceedings against it. By order entered 23 December 1991, the Bankruptcy Court lifted the stay and allowed the instant action to proceed.

On 29 January 1992, Nationwide moved for judgment on the pleadings pursuant to N.C.R. Civ. P. 12(c) (1990), and submitted a calendar request for hearing at the 16 March 1992 session of Wake County Superior Court. Receiving no objection, the court calendared the motion for hearing on 16 March at 2:45 p.m. Subsequently, Peace River on 6 March also moved for judgment on the pleadings, and sought concurrent scheduling of its motion with that of Nationwide. On 9 March 1992, Ward filed objection to the 16 March hearing date sought by Peace River, alleging that as Ward's counsel had not anticipated the presence of Peace River at the 16 March hearing on Nationwide's motion, he had made "a pre-existing commitment[,] in Alamance County on that date." Counsel also made reference to certain outstanding discovery requests, and concluded it "would be grossly unfair and certainly not in the interest of justice" to have Peace River's motion heard on 16 March.

The hearing nonetheless proceeded on the scheduled date with the court "tak[ing] the motions under advisement." On 27 April 1992, Superior Court Judge Narley Cashwell granted Peace River's motion for judgment on the pleadings only as to Ward's counterclaim for negligence. The court also dismissed Peace River's third-party complaint against Nationwide arising out of Ward's negligence claim.

On 16 March 1992, Nationwide moved pursuant to N.C.R. Civ. P. 56 (1990) for summary judgment on those third party claims of Peace River against it which survived the hearing; the motion was then refiled on 14 April 1992 to include an affidavit from Sill. On 23 March 1992, Peace River moved for summary judgment on Ward's remaining counterclaim for breach of implied contract. Counsel for Peace River, Nationwide, and Ward each filed affidavits in support of their positions. Following a hearing, Superior Court Judge Gregory Weeks

entered an order dated 1 May 1992 awarding summary judgment to Peace River on Ward's counterclaim for breach of an implied contract; granting summary judgment in favor of Nationwide on Peace River's derivative third-party claim against it for breach of implied contract; dismissing in its entirety Ward's counterclaim against Peace River and Peace River's third-party complaint against Nationwide; and affirming the 2 July 1990 and the 10 July 1990 orders of the clerk of court which, respectively, required Ward to relinquish possession of the transformer and denied Ward's motion for reconsideration of the 2 July order.

---

Ward raises nine assignments of error (subsumed into four arguments in its appellate brief) to the 27 April 1992 and 1 May 1992 orders of the superior court. Ward also contends the court erred by hearing Peace River's motion for judgment on the pleadings on 16 March 1992 despite Ward's request for a continuance.

Pursuant to N.C.R. App. P. 10(d), Peace River and Nationwide cross-assign as error the trial court's failure in its 27 April order to grant judgment on the pleadings in their favor as to all claims asserted against them.

I.

Ward's primary contention before us is that the clerk of court and the trial court erred by failing to recognize its statutory entitlement to a mechanics' lien to the full extent of its claim for payment, i.e., $97,000.00 plus accrued interest, as opposed to the $100.00 exacted by the Clerk. Ward supports its assertion with a multi-faceted argument, beginning with proposed construction of certain language contained in Chapter 44A and progressing into discussion of legislative history and constitutional mandates. However, our resolution of this matter renders unnecessary detailed review of Ward's historical and policy analyses.

A.

[1] The parties to the instant action first became *directly* involved with each other shortly after it became apparent Electro-Test had determined not to compensate Ward for its services in the agreed contractual amount. Ward thereupon claimed a lien upon the transformer in its possession, and accordingly served Peace River with a "Notice of Intent to Enforce Lien Under G.S. 44A-4" on or about 4 June 1990. The Notice provided *inter alia* as follows:

*The undersigned lien claimant* gives this Notice of Intent to Enforce Lien pursuant to North Carolina law and *claims all rights [to which] it is entitled under Part 1 and under Article I of Chapter 44A of the North Carolina General Statutes.*

(Emphasis added).

Article 1 of Chapter 44A codifies the long-recognized common law lien allowed for artisans and mechanics who retain possession of items of personal property after altering or repairing them, *see Finance, Inc. v. Thompson*, 247 N.C. 143, 146-47, 100 S.E.2d 381, 383-84 (1957), and governs the entitlement to, as well as the creation and enforcement of, possessory liens on such property. G.S. § 44A-2, the specific statutory section detailing the type of lien to which Ward claims entitlement, provides as follows:

### § 44A-2. Persons entitled to lien on personal property.

(a) Any person who tows, alters, repairs, stores, services, treats, or improves personal property other than a motor vehicle in the ordinary course of his business pursuant to an express or implied contract with an owner or legal possessor of the personal property has a lien upon the property. The amount of the lien shall be the lesser of

        (1) The reasonable charges for the services and materials; or

        (2) The contract price; or

        (3) One hundred dollars ($100.00) if the lienor has dealt with a legal possessor who is not an owner.

This lien shall have priority over perfected and unperfected security interests.

The uncontradicted evidence below was that Ward, in the ordinary course of its business, repaired the transformer as contracted with Electro-Test, and thus under the plain language of the statute held a lien upon the subject property in its possession. What is less clear, and what lies at the heart of the dispute between the parties, is the *proper amount* of the lien to which Ward was entitled.

While resolution of this issue might in some instances be dependent upon the relationship between the entities involved in the transaction out of which the claim of lien arose (e.g., whether the lienor dealt with an "owner" or a "legal possessor," *see infra*, Part B.), we

believe assignment of labels to the parties in the circumstances of the case *sub judice* is unnecessary to a determination of the proper amount of lien.

The segment of G.S. § 44A-4 governing Peace River's entitlement to seek repossession of personal property owned by it subject to Ward's asserted possessory lien provides as follows:

> The owner or person with whom the lienor dealt may at any time following the maturity of the obligation bring an action in any court of competent jurisdiction as by law provided. *If in any such action the owner or other party requests immediate possession of the property and pays the amount of the lien asserted into the clerk of the court in which such action is pending, the clerk shall issue an order to the lienor to relinquish possession of the property to the owner or other party.* The request for immediate possession may be made in the complaint, which shall also set forth the amount of the asserted lien and the portion thereof which is not in dispute, if any. *If within three days after service of the summons and complaint . . . the lienor does not file a contrary statement of the amount of the lien at the time of the filing of the complaint, the amount set forth in the complaint shall be deemed to be the amount of the asserted lien.*

G.S. § 44A-4(a) (emphasis added).

Included among the allegations in Peace River's complaint were the following:

> 8. Peace River . . . is the owner of the aforementioned transformer . . . .

> 9. Electro-Test . . . was at all times relevant to this action merely a "legal possessor" . . . inasmuch as Electro-Test . . . had been merely entrusted with possession of the transformer by the owner, Peace River . . . .

> 10. Ward . . . dealt directly with the legal possessor, Electro-Test . . ., which is not the owner of the transformer.

> 11. The amount of the lien alleged by Ward . . . is limited to $100 as set forth in N.C.G.S. § 44A-2(a)(3).

> 12. [T]he owner of the transformer, Peace River . . . , hereby tenders to the clerk of court the amount of the lien asserted herein, $100, and requests immediate possession of the transformer.

13. The amount of the asserted lien, $100, is not in dispute.

Thus, under the plain language of the statute, after being served with Peace River's summons and complaint containing the foregoing allegations and requesting immediate possession of the subject property, Ward was required within three days to file a statement alleging a contrary amount of lien. However, Ward concededly failed to do so in the three days following service of Peace River's summons and complaint (or indeed at any time thereafter).

In the event no statement is timely filed, the statute explicitly provides that the *amount set forth in the complaint* of the party seeking possession (here, $100.00) "*shall* be deemed to be the amount of the asserted lien." *Id.* (emphasis added). Under the plain language of G.S. § 44A-4, therefore, because the lien amount was designated as $100.00 in Peace River's complaint and that allegation was not challenged in the statutorily specified manner, the amount of the lien was conclusively established as being $100.00. Thus, regardless of any labels attached to the various parties herein, the clerk of court did not err in ordering Ward to relinquish possession of the transformer upon Peace River's tender of $100.00. *See* N.C. Gen. Stat. § 44A-3 (1989 & Cum. Supp. 1993) ("Liens conferred under this Article . . . *terminate and become unenforceable* when . . . an owner . . . tenders prior to sale the amount secured by the lien . . . .") (emphasis added).

In short, the amount of the lien in the case *sub judice* was established by Ward's own inaction. To hold otherwise would contravene a cardinal rule guiding statutory construction recently expressed by this Court as follows: "[t]he legislature is presumed to have intended a purpose for each sentence and word in a particular statute, and a statute is not to be construed in a way which makes any portion of it ineffective or redundant." *State v. White*, 101 N.C. App. 593, 605, 401 S.E.2d 106, 113 (citation omitted), *disc. review denied, appeal dismissed*, 329 N.C. 275, 407 S.E.2d 852 (1991). The relevant, indeed determinative, language of G.S. § 44A-4 to which we must give effect permits of but one interpretation, and our holding comports therewith.

Moreover, a party asserting rights pursuant to statute must operate within the guidelines created by that particular statutory scheme. *See, e.g., AT&T Family Federal Credit Union v. Beaty Wrecker Service*, 108 N.C. App. 611, 613, 425 S.E.2d 427, 428 (1993) ("N.C.G.S. § 44A-4 states with specificity the procedures which must be followed in order for a lienor . . . to enforce its lien . . . [;] lienor must . . . com-

ply with the requisite statutory procedures for the purposes of conducting a public or private sale . . . .") (citation omitted); *see also Mace v. Construction Corp.*, 48 N.C. App. 297, 302, 269 S.E.2d 191, 194 (1980) (Analogously, "Article 2 of Chapter 44A . . . grants to mechanics, laborers, and materialmen certain liens *upon their compliance with the procedures defined in the Article*.") (emphasis added). Because Ward failed to adhere to the procedural requirements of the section under which it asserts a claim of lien, it cannot now be heard to contest the amount or the adequacy of the lien determined by the clerk of court.

### B.

**[2]** Further, even assuming *arguendo* Ward's failure to file a contrary statement did not extinguish its right to contest the lien amount set forth in Peace River's complaint, limitation of the lien to $100.00 was not error in the circumstances of the case *sub judice.*

Crucial to Ward's position is its contention that the party with whom it dealt, Electro-Test, was an "owner" rather than a "legal possessor" of the Peace River transformer. Ward relies upon the definitional section of Chapter 44A, Article 1—N.C. Gen. Stat. § 44A-1 (1989 & Cum. Supp. 1993), in particular the following:

(1) "Legal possessor" means

    a. Any person entrusted with possession of personal property by an owner thereof, or

    b. Any person in possession of personal property and entitled thereto by operation of law.

(2) "Lienor" means any person entitled to a lien under this Article. . . . .

(3) "Owner" means

    a. Any person having legal title to the property, or

    b. A lessee of the person having legal title, or

    c. A debtor entrusted with possession of the property by a secured party, or

    d. A secured party entitled to possession, or

    e. *Any person entrusted with possession of the property by his employer or principal who is an owner under any of the above.*

G.S. § 44A-1 (emphasis added).

Ward claims this section signifies that Peace River, although holding legal title to the transformer, is not the sole "owner" as that term is defined. Under G.S. § 44A-1(3)(e.), it continues, Electro-Test was also functioning as "owner" of the transformer upon entering into a subcontract with Ward. This assertion is based upon the contention that Peace River was acting in the capacity of an employer or principal when it entrusted Electro-Test (*ergo*, Peace River's employee or agent) with possession of the transformer. Therefore, Ward proceeds, having dealt with an "owner," it was entitled to a lien in the amount of either "[t]he reasonable charges for the services and materials" expended in repair of the transformer, *see* G.S. § 44A-2(a)(1), or for "[t]he contract price." *See* G.S. § 44A-2(a)(2).

We believe Ward misapprehends the purport of the statutory definitions. Although no reported case has yet examined this particular point of law, the principles behind the definition of "owner" to which Ward refers are a matter of well-established principal and agent (or master and servant) doctrine.

In the circumstance when an individual who contracts or is hired to perform a certain task causes injury or damage to persons or property, a question arises as to which entity assumes liability. Under the theory of *respondeat superior*, a principal (or employer) is vicariously liable for actions of its agent (or employee) undertaken within the course and scope of the latter's authority. *Blanton v. Moses H. Cone Hosp.*, 319 N.C. 372, 374-75, 354 S.E.2d 455, 457 (1987) (citation omitted).

There are two essential ingredients in a principal-agent relationship: (1) the authority of the agent, whether express or implied, to act for or on behalf of the principal, and (2) control over the agent by the principal. *See* 7 Strong's N.C. Index 4th *Principal and Agent* § 1, at 273 (1993). Our cases emphasize that the element of "control" is the primary indicator of an agency relationship. Thus, when an entity retains the right and is able to exert control or dominance over another's manner or method of performing a designated task, the former occupies the role of principal with respect to the latter. *Willoughby v. Wilkins*, 65 N.C. App. 626, 633, 310 S.E.2d 90, 95 (1983), *disc. review denied*, 310 N.C. 631, 315 S.E.2d 698 (1984).

The test for determining whether the parties maintain an employer-employee relationship is, for all practical purposes, identical. Specifically, the primary indicator is that the alleged employer has the right to control and direct the manner in which the alleged employee conducts

his work. *Youngblood v. North State Ford Truck Sales*, 321 N.C. 380, 383-84, 364 S.E.2d 433, 437 (citations omitted), *reh'g denied*, 322 N.C. 116, 367 S.E.2d 923 (1988). An additional factor commonly involved in the employer-employee circumstance is continuity of employment, as opposed to engagement for a specific, one-time task. *Sharpe v. Bradley Lumber Co., Inc.*, 446 F.2d 152, 154 (4th Cir. 1971) (citation omitted), *cert. denied*, 405 U.S. 919, 30 L.Ed. 2d 789 (1972).

In contrast to the foregoing relationships, an independent contractor agrees to perform certain specified work according to its own judgment and methods, and is not subject to control by the entity with whom it contracts except as to the result of its labor. *Youngblood*, 321 N.C. at 383-84, 364 S.E.2d at 437 (citations omitted). Accordingly, an independent contractor is generally held personally liable for injury or damages to persons or property occurring in the course of the contracted employment.

In the case *sub judice*, it appears Electro-Test undeniably constituted a "legal possessor" of the transformer. We again observe this term includes "[a]ny person entrusted with possession of personal property by an owner thereof." G.S. § 44A-1(1)(a.). As Peace River is indisputably an "owner" of the transformer, *see* G.S. § 44A-1(3)(a.), and it is uncontroverted that Peace River shipped the transformer directly to Electro-Test pursuant to a contract of repair (thereby entrusting the latter with its possession), Electro-Test falls within the "legal possessor" category of entities with respect to the transformer.

By a somewhat confusing argument, however, virtually devoid of citation to authority, Ward contends that because Peace River was aware Electro-Test might hire Ward to perform some part of the repair work, Peace River should be considered an "employer" or "principal" with respect to Electro-Test. *See* G.S. § 44A-1(3)(e.) (" 'Owner' means . . . [a]ny person entrusted with possession of the property by his *employer or principal who is an owner* under any of the above.") (emphasis added); *see also* G.S. § 44A-2(a) ("The amount of the lien shall be .... [o]ne hundred dollars ($100.00) if the lienor has dealt with a *legal possessor who is not an owner*.") (emphasis added). As further support for its position, Ward emphasizes the fact that Peace River "authorized Electro-Test to repair the transformer unqualifiedly with their purchase order." We are not persuaded by Ward's argument that Peace River was Electro-Test's employer or principal with regard to repair of the transformer. *See, e.g., Albertson v. Jones*, 42 N.C. App. 716, 718, 257 S.E.2d 656, 657 (1979) (when a

party seeks to enforce against an alleged principal a contract made by an alleged agent, the party has the burden of proving the existence of the agency relationship and the authority of the agent to bind the principal to a contract) (citations omitted).

A single contract for repair, entered into by Electro-Test and Nationwide (Peace River's insurer), comprises the total extent of any association between Electro-Test and Peace River. Beyond selection of Electro-Test to repair the transformer and receiving its cost estimate, Peace River was in no way involved in any negotiations with Electro-Test and exerted no control over the manner in which Electro-Test would or could perform the necessary labor. Electro-Test was in business for itself, a specialist in the task involved, and as even Ward observes, Peace River turned the job over to Electro-Test "unqualifiedly," signifying a complete lack of supervision by Peace River. While Peace River's agent Hegwood "had no problem with Ward doing the work" and thus gave his tacit approval to Electro-Test's choice of subcontractor, this simple fact does not change our analysis.

Accordingly, Electro-Test, a "legal possessor" with regard to the transformer, does not qualify as an "owner" under G.S. § 44A-1(3)(e.). That being the case and Ward thus having "dealt with a legal possessor [Electro-Test] who is not an owner," the clerk of court properly determined the amount of Ward's lien to be limited by statute to $100.00. *See* G.S. § 44A-2(a) ("The amount of the lien *shall be . . .* [o]ne hundred dollars ($100.00) if the lienor has dealt with a legal possessor who is not an owner.") (emphasis added). Therefore, the trial court properly affirmed the Clerk's 2 July and 10 July 1992 orders.

## C.

[3] We decline to conduct an exhaustive analysis of Ward's constitutional, legislative history, and policy arguments. In brief, it contends that should the amount of lien be limited to $100.00 by G.S. § 44A-2, the statute fails to provide a constitutionally adequate lien. *See* N.C. Const. art. X, § 3 ("The General Assembly shall provide by proper legislation for giving to mechanics and laborers an adequate lien on the subject-matter of their labor."). We disagree.

First, it has long been the rule that we will not decide at the appellate level a constitutional issue or question which was not raised or considered in the trial court. *Tetterton v. Long Manufacturing Co.,* 314 N.C. 44, 47-48, 332 S.E.2d 67, 69 (1985); *Midrex Corp. v. Lynch,*

PEACE RIVER ELECTRIC COOPERATIVE v. WARD TRANSFORMER CO.

[116 N.C. App. 493 (1994)]

*Sec. of Revenue,* 50 N.C. App. 611, 618, 274 S.E.2d 853, 857-58 (citations omitted), *disc. review denied, appeal dismissed,* 303 N.C. 181, 280 S.E.2d 453 (1981). The record in the case *sub judice* is devoid of any affirmative indication that Ward challenged the constitutionality of G.S. § 44A-2 during any of the proceedings before the trial court. This contention thus has not been properly preserved for our review. *Midrex,* 50 N.C. App. at 618, 274 S.E.2d at 857-58.

Moreover, the general rule endures that when considering the constitutionality of a statute, this Court will " 'indulge every presumption in favor [thereof].' " *Tetterton,* 314 N.C. at 49, 332 S.E.2d at 70 (quoting *Painter v. Board of Education,* 288 N.C. 165, 177, 217 S.E.2d 650, 658 (1975)). In enacting Chapter 44A, Article 1, it was necessary for the General Assembly to consider and protect competing interests, *see Caesar v. Kiser,* 387 F. Supp. 645, 648 (M.D.N.C. 1975) (ownership rights versus a craftsman's right to have security for payment of his services); by limiting to $100.00 the amount of the lien allowed for a lienor who deals with a legal possessor of certain property, for example, the statute protects an owner from having to pay two contractors for one set of services. Ward's arguments present no basis for upsetting the presumption of constitutionality in favor of this legislative balance of adverse interests.

Finally, we note again that Ward was statutorily entitled to contest the $100.00 amount of the lien asserted by Peace River in its complaint, but failed to do so. Particularly in light of this attendant circumstance, Ward's contention that G.S. § 44A-2 furnished it a constitutionally inadequate lien is unfounded. *See Jones Cooling & Heating v. Booth,* 99 N.C. App. 757, 760, 394 S.E.2d 292, 294 (1990) ("We do not consider plaintiff's failure to timely assert the remedy a circumstance that renders the statutory remedy 'inadequate . . . .' "), *disc. review denied,* 328 N.C. 732, 404 S.E.2d 869 (1991).

II.

[4] Ward next maintains the court erred in granting summary judgment in favor of Peace River on Ward's claim of breach of implied contract and to Nationwide on Peace River's third-party implied contract claim. These arguments cannot be sustained.

Summary judgment is a procedural device designed to penetrate unfounded claims in advance of trial. *See* Rule 56(c); *see also Patrick v. Hurdle,* 16 N.C. App. 28, 37, 190 S.E.2d 871, 877, *disc. review denied,* 282 N.C. 304, 192 S.E.2d 195 (1972). In ruling, the trial court

**PEACE RIVER ELECTRIC COOPERATIVE v. WARD TRANSFORMER CO.**

[116 N.C. App. 493 (1994)]

is to view all the evidence (pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any) in the light most favorable to the non-movant, *Patterson v. Reid*, 10 N.C. App. 22, 28, 178 S.E.2d 1, 5 (1970) (citation omitted), drawing all reasonable inferences in its favor, *Whitley v. Cubberly*, 24 N.C. App. 204, 207, 210 S.E.2d 289, 291 (1974) (citations omitted), and accepting as true all its asserted facts. *Railway Co. v. Werner Industries*, 286 N.C. 89, 98, 209 S.E.2d 734, 739 (1974). When the evidence, construed in that light, establishes the absence of a genuine issue of material fact, summary judgment is properly granted.

Citing the "implied contract" language in G.S. § 44A-2(a) (a lien is established in favor of "[a]ny person who tows, alters, repairs, stores, services, treats, or improves personal property . . . *pursuant to an express or **implied contract with an owner** or legal possessor* of the personal property") (emphasis added), Ward urges us to hold Peace River impliedly contracted with Ward for repair of the transformer. Alternatively, Ward contends construing all the evidence in its favor at a minimum raises a genuine issue of fact concerning the existence of such an implied contract.

We first note that Ward in its brief to this Court has cited no North Carolina authority bolstering its position. *See* N.C.R. App. P. 28(b)(5). Moreover, the facts and circumstances of the 1956 Mississippi case to which Ward does refer render it easily distinguishable from the case *sub judice*.

In addition, it is well-established that if an "adequate remedy at law" may be sought, the court's "equitable intervention is obviated." *See, e.g., Embree Construction Group v. Rafcor, Inc.*, 330 N.C. 487, 491, 411 S.E.2d 916, 920 (1992); "restitution is not available on a claim of unjust enrichment for a subcontractor who failed to utilize the remedies of Chapter 44A when these would have given him adequate relief." *Id.* (citation omitted). Therefore, because of Ward's failure to contest the amount of lien claimed by Peace River in the manner prescribed by the statute, it was disqualified from asserting any equitable remedy.

Finally, a brief examination of the law of contracts implied in law (quasi-contracts) reveals that Ward's contention in any event is without basis. The basic equitable principle which developed into the law of quasi-contracts is that "a person shall not be allowed to enrich himself unjustly at the expense of another." 25 Strong's N.C. Index 4th *Quasi Contracts and Restitution* § 1, at 7 (1993). Accordingly, in the

absence of any actual agreement between parties, the law will nonetheless impose a contract in order to prevent "unjust enrichment," *Ellis Jones, Inc. v. Western Waterproofing Co.*, 66 N.C. App. 641, 645, 312 S.E.2d 215, 217 (1984), basing recovery on a theory of *quantum meruit. Paxton v. O.P.F., Inc.*, 64 N.C. App. 130, 132, 306 S.E.2d 527, 529 (1983) (citation omitted).

"Unjust enrichment" has been described as follows:

the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle underlying various legal doctrines and remedies, that *one person should not be permitted unjustly to enrich himself [or herself] at the expense of another . . . .*

*Ivey v. Williams*, 74 N.C. App. 532, 534, 328 S.E.2d 837, 839 (1985) (emphasis added) (quoting 66 Am. Jur. 2d *Restitution and Implied Contracts* § 3, at 945 (1973)). Furthermore, "[t]he mere fact that one party was enriched, even at the expense of the other, does not bring the doctrine of unjust enrichment into play. 'There must be some added ingredients to invoke the unjust enrichment doctrine.'" *Williams v. Williams*, 72 N.C. App. 184, 187, 323 S.E.2d 463, 465 (1984) (quoting, inaccurately in part, *Wright v. Wright*, 305 N.C. 345, 351, 289 S.E.2d 347, 351 (1982)); *see also Collins v. Davis*, 68 N.C. App. 588, 591, 315 S.E.2d 759, 761 (recovery under *quantum meruit* based upon contract implied-in-law is only proper in circumstances such that it would be "unfair" for the recipient to retain the benefit of the claimant's services), *aff'd per curiam*, 312 N.C. 324, 321 S.E.2d 892 (1984).

Construing all the evidence in the light most favorable to Ward, we conclude its claim of implied contract is fatally deficient and that summary judgment thereon was properly granted. In short, Peace River was not unjustly enriched by Ward's completion of its contractual obligation to Electro-Test. Although Peace River received the benefit of a repaired transformer, Electro-Test (the party with whom Nationwide, the insurer of Peace River, contracted) was fully paid for the completed repairs. Therefore, while Peace River arguably may have been "enriched," any such enrichment was in no way *unjust.* Moreover, under the circumstances of this case, requiring Peace River to pay Ward for its services would itself be manifestly unjust. Peace River had no knowledge of or control over the terms of the contract entered into between Electro-Test and Ward; it therefore

was in no position to protect Ward from any potential breach of contract by Electro-Test. Accordingly, because Peace River and Nationwide established the non-existence of an essential element of Ward's counterclaim for breach of an implied contract, i.e., that any alleged enrichment of Peace River was *unjust,* summary judgment on that claim was properly allowed. *Little v. National Service Industries, Inc.,* 79 N.C. App. 688, 690, 340 S.E.2d 510, 512 (1986).

Our resolution of this issue renders unnecessary discussion of the arguments contained in Ward's reply brief regarding certain allegedly applicable exceptions to the general rules relating to the law of implied contracts.

### III.

Ward next argues the trial court erred in granting judgment on the pleadings to Peace River on Ward's counterclaim for negligence, and to Nationwide on Peace River's third-party claim for indemnification should Peace River be found liable to Ward for negligence. We disagree.

Initially, we observe Ward has presented no citation to any authority directly supporting this argument. While consideration of this assignment of error is thus not required, *see* N.C.R. App. P. 28(b)(5), we nonetheless elect to examine briefly the merits thereof. *See* N.C.R. App. P. 2.

Motions for judgment on the pleadings pursuant to Rule 12(c) are designed to "dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." *Ragsdale v. Kennedy,* 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). As such motions are not favored, "the pleadings under attack will be liberally construed in the light most favorable to the non-moving party." 1 G. Gray Wilson, *North Carolina Civil Procedure* § 12-13, at 222 (1989). To that end, a party raising a motion under Rule 12(c) simultaneously admits the truth of all well-pleaded factual allegations in the opposing party's pleading and the untruth of its own allegations insofar as the latter controvert or conflict with the former. *Pipkin v. Lassiter,* 37 N.C. App. 36, 39, 245 S.E.2d 105, 106 (1978) (citation omitted). The movant bears the burden of establishing that, even viewing the facts and permissible inferences in the light most favorable to the non-movant, it is entitled to judgment as a matter of law. *DeTorre v. Shell Oil Co.,* 84 N.C. App. 501, 504, 353 S.E.2d 269, 271 (1987) (citation omitted). Our examina-

tion of the record reveals Peace River and Nationwide have each carried this burden.

The essential elements of any negligence claim are the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff. *Sasser v. Beck,* 65 N.C. App. 170, 171, 308 S.E.2d 722, 723 (1983) (citations omitted), *disc. review denied,* 310 N.C. 309, 312 S.E.2d 652 (1984). As stated by our Supreme Court in *Meyer v. McCarley and Co.,* 288 N.C. 62, 68, 215 S.E.2d 583, 587 (1975), "[t]he first prerequisite for recovery of damages for injury by negligence is the existence of a legal duty, owed by the defendant to the plaintiff, to use due care." (Citations omitted). Even construing Ward's pleadings liberally, we discern no allegation of an actual legal duty owed by Peace River to Ward. Ward claims Peace River had an obligation to ensure that Ward received payment for its work, but no precedent supports the imposition of such a duty. Accordingly, Ward's pleadings fail to establish an essential element of a claim for negligence, and the trial court properly granted judgment on the pleadings with respect to Ward's counterclaim based upon that theory of recovery. Because no valid claim was asserted against Ward, its third-party claim for indemnification against Nationwide was also properly dismissed.

IV.

In its final assignment of error, Ward maintains the trial court erred by hearing Peace River's Rule 12(c) motion on 16 March 1992 in the face of objection and ostensible request for continuance by Ward's counsel. We are unpersuaded by this contention.

First, "continuances are not favored and the party seeking [one] has the burden of showing sufficient grounds for it." *Doby v. Lowder,* 72 N.C. App. 22, 24, 324 S.E.2d 26, 28 (1984) (citations omitted); *see* N.C.R. Civ. P. 40(b) (1990). Second, the question of whether or not to grant a continuance is a matter solely within the discretion of the trial court; absent a manifest abuse of discretion, this Court will not disturb the decision made below. *Pickard Roofing Co. v. Barbour,* 94 N.C. App. 688, 691-92, 381 S.E.2d 341, 343 (1989) (citations omitted).

In the case *sub judice,* Ward's counsel alleged he had a "preexisting commitment" in another county on the scheduled hearing date and also alluded to certain outstanding discovery matters. However, neither circumstance mandated postponement. As this Court

has stated, "[a]ttorneys, under the guise of having business requiring their presence elsewhere, ought not to be allowed to delay, defeat or prevent a litigant from . . . being heard on a motion at some reasonably suitable and convenient time." *Austin v. Austin*, 12 N.C. App. 286, 297, 183 S.E.2d 420, 428 (1971). Additionally, when a motion for judgment on the pleadings is being considered, discovery materials are not examined.

Further, it is not disputed that the court took Ward's motion under advisement and reserved ruling thereon for almost five weeks. During that time, Ward was provided copies of briefs filed by Peace River and Nationwide in support of their motions; Ward nonetheless filed no brief in opposition.

In sum, we discern no abuse of discretion by the trial court in hearing Peace River's motion concurrently with that of Nationwide, nor has Ward shown it suffered any prejudice thereby. Accordingly, we reject this assignment of error.

## Cross-Assignments of Error

Pursuant to N.C.R. App. P. 10(d), Peace River and Nationwide cross-assign as error the trial court's failure to grant their motions for judgment on the pleadings regarding Ward's counterclaim for breach of implied contract. Our decision to affirm the 27 April and 1 May 1992 orders renders unnecessary consideration of these cross-assignments of error.

Based on the foregoing, we affirm the 27 April 1992 and 1 May 1992 orders of the trial court in their entirety.

Affirmed.

Judges JOHNSON and WYNN concur.