DKH CORP. v. RANKIN-PATTERSON OIL CO.

[131 N.C. App. 126 (1998)]

DKH CORPORATION, A NORTH CAROLINA CORPORATION, PLAINTIFF V. RANKIN-PATTERSON OIL COMPANY, INC., A NORTH CAROLINA CORPORATION, DEFENDANT

No. COA96-1330

(Filed 6 October 1998)

**1. Unfair Trade Practices— anti-trust—exclusive purchase requirement**

The trial court erred by granting summary judgment for defendant in an anti-trust action arising from a sale and lease agreement between the parties involving a convenience store which included the exclusive purchase of gasoline from defendant. The evidence concerning plaintiff's obligation to pay for the gasoline and plaintiff's assumption of risk is convoluted, there are evidentiary gaps, and the circumstances in which plaintiff is absolutely obligated to purchase defendant's gasoline are unclear.

**2. Agency— evidence of control—insufficient**

A principal-agent relationship devolves from one person's consent to another that he shall act on the other's behalf and be subject to his control; when an entity cannot exert control or dominance over another's performance of a designated task, that entity cannot be characterized as a principal. In this case, remanded on other grounds, the facts available on appeal lead to the conclusion that defendant did not have sufficient control of plaintiff to constitute a principal-agency decision, and the trial court is advised not to rest its determination on agency principals.

Appeal by plaintiff from partial summary judgment entered 4 October 1996 and amended 7 October 1996 by Judge Dennis J. Winner in Buncombe County Superior Court. Appeal initially *dismissed* as interlocutory in 126 N.C. App. 634, 487 S.E.2d 588 (1997), *reversed and remanded* for decision on the merits, 348 N.C. 583, —— S.E.2d —— (1998). Reconvened in the North Carolina Court of Appeals by Order of Chief Judge Sidney S. Eagles dated 29 July 1998.

*Kelly & Rowe, P.A., by E. Glenn Kelly, James Gary Rowe, for plaintiff-appellant.*

*Van Winkle, Buck, Wall, Starnes & Davis, by Stephen J. Grabenstein, for defendant-appellee.*

**DKH CORP. v. RANKIN-PATTERSON OIL CO.**

[131 N.C. App. 126 (1998)]

WYNN, Judge.

On June 1, 1990, plaintiff DKH Corporation ("DKH") purchased from defendant Rankin-Patterson Oil Company, Inc. real and personal property for the operation of a mini-mart service station. DKH's purchase, in pertinent part, included land, a convenience store, and tanks and pumps used for dispensing gasoline.

Thereafter, on July 1, 1990, DKH and Rankin-Patterson entered into a LEASE AGREEMENT ("lease") which defined the terms and conditions under which DKH was to operate the mini-mart. Despite the time lag between the initial purchase and the lease, both parties stipulate the two agreements were part of the same transaction. The lease provided for an initial term of fifteen years and required Rankin-Patterson to pay monthly rent in the amount of $450.

Under the lease terms, DKH was responsible for all insurance and taxes related to the property. Rankin-Patterson, on the other hand, agreed to "maintain and keep in working order all of the pumps." Rankin-Patterson also agreed to obtain DKH's written consent prior to assigning, subletting or modifying the property. Lastly, and of integral importance to the case *sub judice*, the lease contained a "Gasoline Agreement" which provides:

> [l]essor will sell gasoline at retail to the consuming public on behalf of the lessee. Lessee will furnish all gasoline to be sold. The lessor will be responsible for payment of all gasoline sold at retail to Lessee. Lessee will price all gasoline to Lessor by using its costs (which includes all taxes and freight) and splitting the margin from its distributor cost to retail by 50%. Payment of gasoline sales by Lessor to Lessee will be verified by meter readings of the retail pumps and paid to Lessee on Monday and Thursday of each week.

In addition to the requirements set forth in the lease, Rankin-Patterson insisted that DKH purchase all its gasoline from Rankin-Patterson. Indeed, Rankin-Patterson would not provide DKH with gasoline if DKH purchased gasoline, diesel fuel or kerosene from any of Rankin-Patterson's competitors. Moreover, DKH was required to pay Rankin-Patterson for the gasoline whether or not DKH received payment from the retail customer. Therefore, DKH assumed the risk of loss accompanying the sale of retail gasoline including such risks as: (1) a customer driving away from the pump without paying, (2) a customer giving DKH a check that bounces, or (3) a customer using an invalid credit card.

From July 1, 1990, until the date this action was commenced, DKH has purchased gasoline from Rankin-Patterson only. Moreover, DKH has fully complied with Rankin-Patterson's orders. DKH, however, now contends the lease and its accompanying arrangements are invalid as a matter of law. Accordingly, DKH filed suit in Buncombe County Superior Court contending, *inter alia*, the lease and accompanying arrangements violate North Carolina's "antitrust" statute found at N.C. Gen. Stat. § 75 (1995). Specifically, DKH contends the lease and accompanying arrangement violate N.C. Gen. Stat. § 75-5(b)(2) (1994) in that they require DKH to purchase gasoline upon the condition that DKH not deal in the goods of any of Rankin-Patterson's competitors or rivals.

Judge Winner, after receiving summary judgment motions from both parties, dismissed DKH's N.C. Gen. Stat. § 75-5(b)(2) claim on the ground that § 75-5(b)(2) was inapplicable as a matter of law. Specifically, Judge Winner found the arrangement between the parties constituted a consignment/agency agreement, and therefore was not a "sale" of goods as required under N.C. Gen. Stat. § 75-5(b)(2). DKH appeals this ruling.

I.

[1] Summary judgment is properly rendered when the pleadings, depositions, interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and the party is entitled to judgment as a matter of law. *Johnson v. Phoenix Mutual Life Ins.*, 300 N.C. 247, 252, 266 S.E.2d 610, 615 (1980). When motioning for summary judgment, the movant has the burden of establishing the lack of any triable issue of material fact *Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975). Moreover, in antitrust actions, this Court will sparingly grant summary judgments in cases where the issues are complex and where intent and motive play an important role. *Stearns v. Genrad, Inc.*, 564 F.Supp. 1309, 1312 (M.D. N.C. 1983), *aff'd*, 752 F.2d 942 (4th Cir. 1984).

In 1913, the General Assembly enacted chapter 75 of the *North Carolina General Statutes* to codify common law rules concerning unlawful restraints of trade and unfair trade practices. William B. Aycock, *Antitrust and Unfair Trade Practice Law in North Carolina—Federal Law Compared*, 50 N.C. Law Rev. 199, 200 (1972). Chapter 75, entitled "Monopolies, Trusts and Consumer Protection," was modeled after the Sherman Act and many of Chapter 75's provisions closely resemble it. *Id.* at 206. In 1969, the General

**DKH CORP. v. RANKIN-PATTERSON OIL CO.**

[131 N.C. App. 126 (1998)]

Assembly expanded North Carolina antitrust law by adding N.C. Gen. Stat. § 75-1.1 which copied the Federal Trade Commission Act. *Id.* at 207. Contemporaneously, the General Assembly added N.C. Gen. Stat. § 75-5 which resembles the Clayton Act in that both address specific practices primarily involving non-ancillary restraints of trade such as price fixing, territorial arrangements and exclusive dealing. *Id.*

Given the aforementioned genesis of North Carolina's antitrust law, this Court will consider both North Carolina case law and federal law in its analysis. Indeed, it is clear that federal decisions, though not binding on this Court, do provide guidance in determining the scope and meaning of chapter 75. *Marshall v. Miller*, 302 N.C. 539, 542, 276 S.E.2d 397, 399 (1981) ("federal decisions interpreting the FTC Act may be used as guidance in determining the scope and meaning of § 75-1.1"); *Rose v. Vulcan Materials Co.*, 282 N.C. 643, 655, 194 S.E.2d 521, 530 (1973) ("the body of law applying the Sherman Act, although not binding upon this Court in applying G.S. § 75-1, is nonetheless instructive in determining the full reach of that statute.").

Under N.C. Gen. Stat. § 75-5(b)(2):

> it is unlawful for any person directly or indirectly to do, or to have any contract express or knowingly implied to . . . (2) sell any goods in this State upon conditions that the purchaser thereof shall not deal in the goods of a competitor or rival in the business of the person making such sales.

It is well established that gasoline is a "good" for N.C. Gen. Stat. § 75-5(b)(2) purposes. *Arey v. Lemons*, 232 N.C. 531, 61 S.E.2d 596 (1950); *Roanoke Properties V. Spruill Oil Co.*, Inc., 110 N.C. App. 443, 429 S.E.2d 752 (1993). Therefore, a defendant who *sells* gasoline conditioned upon the purchaser agreeing not to deal in the goods of a competitor is liable under N.C. Gen. Stat. § 75-5(b)(2) (emphasis added). Judge Winners, in partly granting Rankin-Patterson's summary judgment motion, determined the arrangement in the instant case constituted a consignment or agency agreement, as opposed to a sale, and therefore held N.C. Gen. Stat. § 75-5(b)(2) inapplicable.

Many courts have considered the issue of whether a particular gasoline transaction is a consignment or sale. *Miller v. Bristow, Inc.*, 739 F.Supp. 1044 (Dist. S.C. 1990); *Hardwick v. Nu-Way Oil Co., Inc.*, 589 F.2d 806, *reh'g denied*, 592 F.2d 1190 (5th Cir. 1979), *cert. denied*, 444 U.S. 836, 100 S. Ct. 70, 62 L. Ed. 46 (1979); *Call Carl v. B.P. Oil Corp.*, 554 F.2d 623, 626-28 (4th Cir. 1977), *cert. denied*, 434 U.S. 923,

928, 98 S.Ct. 400, 54 *L.Ed.2d 280 (1977)*. When making this determination, these courts have considered several factors including: (1) whether there is an absolute obligation to pay for the goods, (2) whether the purchaser takes title to the goods, (3) whether the purchaser immediately pays for the goods, (4) whether the purchaser sets the resale price, (5) whether the purchaser bears the risk of loss, (6) whether the purchaser insures the goods, (7) whether the purchaser repairs and maintains the goods, and (8) whether the purchaser pays taxes on the goods. *See generally* 1 Von Kalinowski, *Antitrust Laws and Trade Regulation*, § 2.02[1][c][I][A]; *Miller v. W.H. Bristow, Inc.*, 739 F.Supp. 1044 (Dist. S.C. 1990); *Call Carl v. B.P. Oil Corp.*, 554 F.2d 623 (4th Cir. 1977), *cert. denied*, 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977). Therefore, evidence relating to these factors is necessary to reach a conclusion in this matter.

According to the Supreme Court of North Carolina, "the hallmark of consignment is the absence of an absolute obligation on the part of the consignee to pay for the goods." *American Clipper Corp. v. Howerton*, 311 N.C. 151, 316 S.E.2d 186 (1984). Implicit in a purchaser's "absolute obligation" to pay for goods is an assumption that the purchaser assumes the risk that the goods will either not sell or be destroyed before sale. This implicit assumption corresponds with numerous opinions holding that a purchaser's assuming the risk of loss demonstrates the transaction was a sale as opposed to a consignment. *Miller*, 739 F.Supp. at 1053; *Hardwick* 589 F.2d at 809.

In the case *sub judice*, the evidence concerning both DKH's obligation to pay and assumption of risk is convoluted. First, the depositions contain vague, conflicting statements with respect to both issues. Moreover, there are evidentiary gaps such as which party assumes the risk of loss from fire or other natural catastrophes. Lastly, it is unclear under what circumstances DKH is in fact "absolutely obligated" to purchase Rankin-Patterson's gasoline once that gasoline is delivered. Because these factual issues go to the "hallmark" of this antitrust case, and because this Court sparingly grants summary judgment in complex antitrust cases, we reverse the trial court's decision and remand this matter for further consideration. This Court believes that further factual inquiry is warranted given the factual niceties involved in making a consignment/sale distinction. Specifically, we believe more evidence relating to the aforementioned factors is necessary to make a proper determination as to the relationship of the parties in this matter.

**[2]** In remanding this case, we advise the trial court not to rest its determination on agency principles. A principal-agent relationship devolves from one person's consent to another that he shall act on the other's behalf and be subject to his control. *Outer Banks Contractors, Inc. v. Daniels & Daniels Const., Inc.*, 111 N.C. App. 725, 730, 433 S.E.2d 759 (1993). As this Court has previously stated, "the element of 'control' is the primary indicator of an agency relationship." *Peace River Elec. Co-op, Inc. v. Ward Transformer Co., Inc.*, 116 N.C. App. 493, 504, 449 S.E.2d 202 (1994), *rev. denied*, 339 N.C. 739, 454 S.E.2d 665 (1995). Therefore, when an entity cannot exert control or dominance over another's performance of a designated task, that entity cannot be characterized as a principal. *Id.* Although the issue of control is generally in the jury's province, when the facts lead to only one conclusion, the question becomes one of law for the trial court. *Smock for Smock v. Brantley*, 76 N.C. App. 73, 75, 331 S.E.2d 714, 716 (1985), *disc. rev. denied*, 315 N.C. 590, 341 S.E.2d 30 (1986).

In the case *sub judice*, the facts, as currently available, lead to but one conclusion—Rankin-Patterson does not have the requisite control over DKH. Given the evidence available to this Court, once the gasoline was transferred into DKH's tanks, DKH had absolute dominion and control over it. DKH alone determined the gasoline's retail price, took the risk of the customer not paying, determined the hours of the business' operation, and made all decisions concerning the sale of the product. Such unfettered control over the sale of gasoline demonstrates that Rankin-Patterson did not have sufficient control of DKH to constitute a principal-agency relationship. Therefore, in remanding this matter, we advise the trial court to make its determination based on the consignment/sale distinction, as opposed to one based on agency.

Vacated and Remanded with instructions.

Judges GREENE and TIMMONS-GOODSON concur.

This opinion was authored and delivered to the Clerk of the North Carolina Court of Appeals by Judge Wynn prior to 1 October 1998.